CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Plaintiffs sued defendant Levitón Manufacturing Co., Inc., in strict liability, claiming an electrical extension cord connector manufactured by Levitón caused a fire in the Hart-Albin store in downtown Billings, Montana. A jury in the District Court for the Thirteenth Judicial District, Yellowstone County, apportioned fault 40 percent to Levitón and 60 percent to plaintiffs, and the court entered judgment for Levitón. We reverse and remand for retrial on limited issues relating to damages.
The dispositive issues are:
1. Did the District Court err in instructing the jury on Leviton’s misuse defense?
2. Did the court err in prohibiting the plaintiffs from using videotaped depositions of Leviton’s designated corporate witnesses?
3. Did the court err in directing a verdict against the plaintiffs on their punitive damage claim?
4. Did the court err in allowing the testimony of the plaintiffs’ human factors expert?
In December of 1988, an early-morning fire caused extensive smoke damage in the flagship Hart-Albin department store located in downtown Billings, Montana. The store was closed for two months before reopening in February 1989. Just over a year later, Hart-Albin Company went out of business. Plaintiffs Broadway Realty Corporation, owner of the building in which the department store was located, and Hart-Albin Company (hereafter referred to collectively as HartAlbin) brought this action seeking recovery for damages, including loss of the business.
*4 The fire started in a Christmas display suspended in the atrium of the store. Levitón, the only defendant remaining in the case at the time of trial, was the manufacturer of an electrical extension cord connector used in the Christmas display. During trial, Hart-Albin presented evidence that Leviton’s Catalog No. 67 extension cord connector overheated and started the fire.
The Catalog No. 67 cord connector was sold unattached to any electrical cord. In order to fasten an electrical cord to the screw terminals inside the connector, the user had to open the clamshell casing of the connector. Then, when the cord connector was reassembled, brass contact blades inside the clamshell served as the electrical contact for the “male” end of a second electrical cord plugged into the cord connector.
In this case, when the clamshell casing was reassembled, one of the brass contact blades, which were curved, was put in backwards. This prevented a solid electrical contact between the contact blades and the “male” end of the second electrical cord, which was plugged into the cord connector.
Hart-Albin’s theory was that the cord connector was a defective and unreasonably dangerous product because it was sold without assembly instructions and its misassembly caused it to overheat. Leviton’s defense was that no assembly instructions were needed with this particular type of cord connector, because of its design. Levitón also argued that the fire was a result of faulty construction of the Christmas display, including wiring code violations and use of flammable materials in violation of fire code.
After an eight-day trial, the jury answered a set of special interrogatories. It found that the fire was started by the Levitón cord connector, that the connector was unreasonably dangerous due to a failure to instruct, and that the defective connector was a proximate cause of Hart-Albin’s damages. The jury also found that Hart-Albin misused the cord connector and that the misuse was a proximate cause of damages. It apportioned fault as stated above. Applying the principles of comparative negligence set forth at § 27-1-702, MCA, the District Court entered judgment for Levitón.
I
Did the court err in instructing the jury on Leviton’s misuse defense?
Section 27-1-719, MCA, codifies strict liability law in Montana. It provides, at subsection (5):
*5 Except as provided in this subsection, contributory negligence is not a defense to the liability of a seller, based on strict liability in tort, for personal injury or property damage caused by a defectively manufactured or defectively designed product. A seller named as a defendant in an action based on strict liability in tort for damages to person or property caused by a defectively designed or defectively manufactured product may assert the following affirmative defenses against the user or consumer, the legal representative of the user or consumer, or any person claiming damages by reason of injury to the user or consumer:
(a) The user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it.
(b) The product was unreasonably misused by the user or consumer and such misuse caused or contributed to the injury.
This statute limits defenses in strict liability actions to assumption of the risk under subsection (5)(a) and, as in this case, unreasonable misuse under subsection (5)(b).
Levitón contrasts cases concerning failure to warn or instruct with cases concerning manufacturing or design defects. It claims that a case concerning failure to warn or instruct does not clearly fall within the law of strict liability, but is indistinguishable from an action for negligence. On this basis, it asserts that the range of defenses is broadened.
Hart-Albin argues that misuse refers to use of a product other than for the intended purpose. It points out that, in this case, the cord connector was used precisely as intended: as a connector on an extension cord. It cites, in contrast, a classic example of misuse: a rotary lawnmower misused as a hedge trimmer. Hart-Albin argues that neither misassembly of the cord connector nor its use in a flammable display constitutes misuse, because neither constitutes use of the product other than for the purpose intended.
Neither of these arguments is dispositive. This case was pled and tried under a theory of strict liability. Therefore, the available defenses are limited in Montana as provided in § 27-1-719, MCA. And, although this Court has not previously ruled on the definition of the term “unreasonably misused” as found in that statute, we now hold that the generally-accepted definition of misuse in relation to strict liability, as discussed below, applies.
*6 Montana’s federal district court has stated, in defining the defense of misuse, that a manufacturer is not responsible for injuries resulting from abnormal or unintended use of a product if such use was not reasonably foreseeable. Trust Corp. of Mont. v. Piper Aircraft Corp. (Mont. 1981), 506 F.Supp. 1093, 1097, citing 1 Frumer and Friedman, Products Liability, § 15.01. Generally, the defense of misuse refers to a use not foreseen by the manufacturer of the product. See Annotation, Products Liability: Product Misuse Defense, 65 A.L.R.4th 263 (1988). “Most cases have indicated that the key issue involved in a determination whether a product has been misused is foreseeability.” American Law of Products Liability 3d, Vol. 3, § 42:8 (T. Travers ed. 1987). The definition of misuse, then, incorporates the concept of abnormal or unintended use, but emphasizes unforeseeability. The defense of misuse is not available if the misuse of the product was reasonably foreseeable. We adopt the definition of misuse set forth in Trust Corp. of Mont., and now apply it to the facts of this case.
In answer to a written interrogatory concerning foreseeable misuse or misassembly of the Catalog No. 67 cord connector, Levitón stated that it “agrees that this product can be abused or misassembled.” At trial, Hart-Albin elicited an admission from Leviton’s corporate representative that he was aware that it was “possible” that the Catalog No. 67 cord connector could be misassembled as it was in this case.
We conclude Levitón admitted it was foreseeable that the Catalog No. 67 cord connector could be misused through misassembly. That admission on the part of Levitón, in light of the definition of misuse set forth above, leads us to conclude that the District Court erred in instructing the jury on the misuse defense as it related to misassembly of the cord connector.
Levitón maintains that Hart-Albin did not preserve an objection to the giving of the jury instruction concerning misuse but only to the burden of proof described therein. The record supports Hart-Albin’s response that it made known throughout trial its position that, because misassembly of the cord connector was foreseeable, it did not constitute misuse. For example, at the close of Hart-Albin’s case, in response to Leviton’s motion for directed verdict, Hart-Albin’s attorney argued:
Levitón has admitted that they can foresee misuse and misassembly of this product, and that admission, foreseeable misassembly, takes the concept of misuse as understood in the law. Completely out of the picture. [Sic]
*7 We conclude Hart-AIbin preserved its objection to a jury instruction concerning misuse through misassembly of the cord connector.
Misassembly was only one of the misuse theories presented by Levitón. The other was use of the cord connector in a flammable Christmas display. To the extent that this defense incorporated the idea that the cord connector was misassembled, the defense was prohibited because of the foreseeability of misassembly, as discussed above. However, Levitón also presented expert testimony that the fire was caused by sparks resulting from power cord abuse unrelated to the cord connector. This defense theory was clearly separate from the misassembly defense.
The jury did not accept this defense theory. It answered “yes” to the question, ‘Was the fire started by the Levitón connector?” If the jury had found that the fire was caused by sparks resulting from power cord abuse not related to the cord connector, there would be no explanation for this finding, or for the finding that Levitón was partially responsible for damages. Therefore, we conclude it is not necessary to retry the issue of whether the fire was caused by factors other than the cord connector.
In sum, we hold that the court erred in instructing the jury on Leviton’s defense that Hart-AIbin misused the cord connector through misassembly. Because the jury found that the fire was started by the Levitón connector, it is unnecessary to retry the issue of whether the fire started due to causes unrelated to misassembly of the cord connector.
II
Did the court err in prohibiting Hart-AIbin from using videotaped depositions of Leviton’s designated corporate witnesses?
The two witnesses in the videotaped depositions were present in the courtroom during the trial as Leviton’s representatives. The District Court disallowed use of their deposition testimony on that basis. Hart-AIbin argues that, despite the presence of the two witnesses at trial, their videotaped deposition testimony was admissible under Rule 32(a)(2), M.R.Civ.R, “for any purpose” because they were “managing agents” of Levitón.
We agree. “Managing agent” has been generously construed under both Rule 32, M.R.Civ.R, and the identical federal rule of civil procedure. Whether one is considered a managing agent depends on several factors, including the individual’s right of general control, authority, and judgment within his department; whether the inter *8 ests of the individual are identified to be those of the employer; and whether any person of higher authority possesses knowledge about the matters at issue. Clark Bros. Contractors v. State (1985), 218 Mont. 490, 493, 710 P.2d 41, 43; Wright and Miller, Federal Practice and Procedure, § 2103 (1970).
The two witnesses in the videotaped depositions were Steve Campolo and Dennis Dandeneau. Campolo worked at Leviton’s corporate headquarters as the head of the department responsible for the testing and evaluation of all products manufactured by Levitón and for getting those products to Underwriters Laboratory (UL) for testing and evaluation. He was designated by Levitón during discovery as the person within the company most knowledgeable regarding the Catalog No. 67 cord connector and UL approvals of that product.
Dandeneau had been employed by Levitón for twenty years and was the manager of Leviton’s quality control department in Rhode Island, where the Catalog No. 67 cord connector was manufactured. In the pretrial order, Levitón did not list as a potential witness either of Dandeneau’s supervisors in the Levitón corporate structure. Dandeneau and Campolo were the only Levitón employees who testified on Leviton’s behalf at trial. They testified concerning testing, safety, and UL approval of the Catalog No. 67 cord connector. We hold that Campolo and Dandeneau were “managing agents” for purposes of Rule 32(a)(2), M.R.Civ.P.
Levitón argues that Hart-Albin had full opportunity to impeach the witnesses at trial using their depositions. However, “[t]here is no provision in Rule 32(a)(2)... which requires a finding of unavailability of the witness or that notice was given of the intended use of a deposition at trial.” Clark Bros., 710 P.2d at 43. The analysis under the federal rule has been similar:
[Rule 32(a)] must be liberally construed. The trial court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, but it may not refuse to allow the deposition to be used merely because the party is available to testify in person.
Wright and Miller, Federal Practice and Procedure, § 2145 (1970).
The purpose, as stated by Hart-Albin, for use of the videotaped deposition testimony at trial was to allow the jury to observe frank and unrehearsed answers to questions about Leviton’s knowledge of possible problems with its Catalog No. 67 cord connector. We hold that the District Court erred in denying Hart-Albin’s request to use *9 the videotaped depositions of Campolo and Dandeneau at trial based on Rule 32(a)(2), M.R.Civ.R
III
Did the court err in directing a verdict against Hart-Albin on its punitive damage claim?
Hart-Albin asserts that Leviton’s actual malice was demonstrated by the testimony of its own witness, Campolo, that it marketed the Catalog No. 67 cord connector without assembly instructions despite full knowledge that misassembly of the cord connector could result in fire, electrical shock, or death by electrocution. Hart-Albin further asserts that clear and convincing evidence supported its claim that Levitón committed actual fraud in placing a UL safety mark on the inside surface of the Catalog No. 67 cord connector and in failing to properly identify the type of -wire to be used with the product.
In light of our ruling that the deposition testimony of Campolo and Dandeneau was admissible into evidence under Rule 32(a)(2), M.R.Civ.R, the evidence supporting Hart-Albin’s case may be different on remand. Therefore, we conclude that the issue of punitive damages must be reconsidered on remand. The District Court is instructed to determine on retrial whether Hart-Albin has presented a sufficient evidentiary basis supporting the claims of fraud or malice to allow the jury to consider the question of punitive damages.
IV
Did the court err in allowing the testimony of Hart-Albin’s human factors expert?
This issue is raised by Levitón on cross-appeal. Dr. Dorris, the human factors expert, testified that human factors is the field of studies that looks at human capabilities and limitations and tries to design jobs, workplaces, and products so that human beings can use them comfortably, efficiently, productively, and safely. He testified that he holds a Ph.D. in industrial engineering and is employed in the field of product safety warnings and instructions. He further testified that, in his opinion, warnings or instructions should have been provided with the Catalog No. 67 cord connector.
Levitón contends that Dorris is a “junk scientist” whose opinion misled the jury. Levitón states Dorris’s testimony should have been rejected because he was testifying as to techniques not “generally accepted” as reliable in the relevant scientific community, citing Frye v. United States (D.C. Cir. 1923), 293 F. 1013.
*10 In its recent opinion in Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),_U.S._, 113 S.Ct. 2786, 125 L.Ed.2d 469, the United States Supreme Court rejected the “general acceptance” standard for admission of expert testimony. It affirmed the more expansive test embodied in Rule 702, F.R.Evid., of whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue, stating that this is a flexible inquiry. Daubert,_U.S. at_, 113 S.Ct. at 2796-97.
Construing Montana law, this Court has stated:
[T]he determination of the qualification of a skilled or expert witness is a matter largely within the discretion of the trial judge and, in the absence of a showing of abuse, ordinarily will not be disturbed.
Goodnough v. State (1982), 199 Mont. 9, 18, 647 P.2d 364, 369. After reviewing the record, we conclude it supports the determination that Dorris testified regarding scientific knowledge that would assist the jury in understanding or determining a fact in issue. We hold that the District Court did not abuse its discretion in allowing the testimony of Dorris.
CONCLUSION
Because no error has been shown in the jury’s findings that Leviton’s defective cord connector started the fire and was a proximate cause of Hart-Albin’s damages, that part of the verdict is upheld. The court erred in instructing the jury on the defense of misuse through misassembly, because such a defense was precluded by Leviton’s admission of foreseeability. Therefore, application of principles of comparative negligence relieving Levitón of liability was error. We remand this case for retrial on the issue of damages, including redetermination of whether the jury should be allowed to consider punitive damages, based on the evidence presented. Because the issues on retrial will be limited, it is not necessary that we consider issues raised by Hart-Albin other than those herein discussed.
Remanded for farther proceedings consistent with this Opinion.
JUSTICES HARRISON, HUNT and NELSON concur.