No. 00-724

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 123

LEWIS A. ALBERT,

       Plaintiff and Respondent,

       v.

ERIKA HASTETTER, as Guardian and Trustee
for Thomas Hastetter and Judy Hastetter,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Seventh Judicial District,
                    In and for the County of Richland,
                    The Honorable Richard G. Phillips, Judge presiding.


COUNSEL OF RECORD:

       For Appellants:

              R. W. Heineman, Wibaux, Montana

       For Respondent:

              George W. Huss, Brown & Huss, Miles City, Montana


Submitted on Briefs:  May 24, 2001

Decided:  June 11, 2002

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Erika Hastetter (Hastetter) appeals the determination by the Seventh Judicial District Court, Richland County, that a roadway providing access to and egress from a half-section of pasture owned by Lewis A. Albert (Albert) is subject to a prescriptive easement, enuring to the benefit of Albert. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2    Albert acquired the following described half-section of land, which is the dominant tenement in this action, from his mother by contract for deed in November 1958:

> Township 20 North, Range 59 East, M.P.M.
> Section 2: E ½.

Albert used the land solely for grazing a small herd of cattle for six months each year, with occasional fallow years to allow the grasses to regenerate. To access the pasture, Albert traveled approximately two miles from State Highway #261 over an unimproved roadway in a southwesterly direction. The road begins at Highway #261 and crosses the SW 1/4 of Section 35 and the SE 1/4 of Section 34 of Township 21 North, Range 59 East; then runs across the NW 1/4 of Section 6 of Township 20 North, Range 60 East; then westerly across all of Section 1 and the E ½ of Section 2 of Township 20 North, Range 59, to Albert's pasture gate located at the approximate center of Section 2.

¶3    Between 1969 and 1971, Dr. N.J. Hastetter of Circle, Montana purchased all privately owned parcels composing the servient tenement in this action and leased the land for grazing on an annual basis to area ranchers. By agreements dated January 4, 1988, Dr. Hastetter placed the subject land in trust, which named himself as trustee and his heirs, Thomas Hastetter and Judy Hastetter, as trustors

and beneficiaries. The Hastetter Trust property is described as follows:

> Township 20 North, Range 60 East, M.P.M.
> Section 6: All (fractional) except that part lying in the E ½, east and south of Montana Highway #261 as it now exists.
>
> Township 20 North, Range 59 East, M.P.M.
> Section 1: All (fractional)
>
> Township 21 North, Range 59 East, M.P.M.
> Section 35: That portion of the W ½ lying south and west of Montana Highway #261 as it now exists.

¶4 Albert testified that he pastured livestock on his half-section every year from 1958 to 1974 and most years between 1975 and 1985. He transported the cattle over the road each spring and fall and used the roadway every third day to check on his animals. During fallow years, Albert traveled the roadway about once each month to check the condition of fences and grasses. Since the mid-1980s, Albert leased his half-section to other ranchers and used the road at least twice each year to visit the land and repair the fences. Albert stated that he never discussed the road and never asked permission to use the road from either Dr. Hastetter or Hastetter's predecessors in ownership. No one maintained the rutted, two-track lane, with the exception of road improvements made in 1962 by a company that drilled for oil on Albert's half-section.

¶5 Due to his advancing age, Albert offered the half-section for sale in the late 1990s. An interested buyer conditioned purchase on Albert obtaining a road easement from the Hastetter Trust. Albert hired an attorney who prepared and sent a letter to Dr. Hastetter on April 30, 1998, requesting the Trust's cooperation in recognizing the existence of Albert's easement to access his pasture. Dr. Hastetter refused to acknowledge or grant an easement.

¶6 Albert filed a Complaint on October 16, 1998, to determine his claim for a prescriptive easement and quiet title to the roadway. In his Answer, Dr. Hastetter raised the affirmative defense

3

of estoppel, claiming that Albert recognized Hastetter's legitimate title to the road by requesting an easement in his April 30th letter. Hastetter also claimed that Albert's use had been permissive and subject to Dr. Hastetter's consent.

¶7 Both Albert and Dr. Hastetter were deposed by opposing attorneys and Dr. Hastetter later made substantive corrections to his deposition. In August of that year, Dr. Hastetter suffered a heart attack, and the trial date was continued. Dr. Hastetter died on May 8, 2000, and the District Court named his spouse and successor trustee, Erika Hastetter, as substitute defendant on May 23, 2000. Dr. Hastetter's original deposition and all corrections to the deposition were admitted into evidence at trial.

¶8 On September 12, 2000, the District Court issued Findings of Fact, Conclusions of Law and Decree, which announced the existence of an easement by prescription enuring to the benefit of Albert's land. The court concluded that clear and convincing evidence supported the establishment of a prescriptive easement by operation of law. According to the decree, the statutory five-year period of adverse use commenced when Albert began using the road in 1958. The court noted that easement rights to the two-track road from State Highway #261 across the Hastetter Trust properties to Albert's property are limited to the historical use of providing access and moving cattle to and from Albert's pasture.

¶9 Hastetter raised six issues on appeal. We restate and consolidate those issues as follows:

¶10 1. Did the District Court err in describing the roadway subject to a prescriptive easement?

¶11 2. Did the District Court err in concluding that all elements necessary to establish a prescriptive easement were supported by clear and convincing evidence?

¶12 3. Did the District Court misapprehend and fail to give evidentiary value and effect to evidence that road use was permissive?

4

¶13    4. Did the District Court err in considering the deposition testimony of Dr. N.J. Hastetter with "great distrust?"

**STANDARD OF REVIEW**

¶14    This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Guthrie v. Hardy,* 2001 MT 122, ¶ 24, 305 Mont. 367, ¶ 24, 28 P.3d 467, ¶ 24 (*citing Engel v. Gampp,* 2000 MT 17, ¶ 31, 298 Mont. 116, ¶ 31, 993 P.2d 701, ¶ 31). Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Guthrie,* ¶ 24. We review a district court's conclusions of law to determine whether those conclusions are correct. *Guthrie,* ¶ 24.

**I**

¶15    *Did the District Court err in describing the roadway subject to a prescriptive easement?*

¶16    The District Court described Albert's claim of easement to encompass the roadway "commencing at Montana State Highway 261, then traveling southwesterly across the SW 1/4 of Section 35 and the NW 1/4 of Section 6, then westerly across the approximate middle of Section 1 of the Hastetter Trust properties." Maps depicting the route were appended as part of the court record.

¶17    Hastetter notes on appeal that the District Court did not mention that a road segment approximately 100-200 feet in length and subject to the prescriptive easement crosses the corner of Section 34 of Township 21 North, Range 59 East, which is owned and managed by the Bureau of Land Management (BLM). Because the United States government is not a party to the judgment and

is immune from adverse possession claims, Hastetter argues that the District Court erred in recognizing the easement over the Hastetter Trust properties when Albert has no assurance that he will be allowed future access across the federal land. Hastetter raises a concern that Albert may be required to relocate the road in the future to circumnavigate the federal land. While Albert acknowledges that the Decree is not binding upon the federal government, he asserts his past, present and future travel across the BLM section was not a matter before the court.

¶18 No evidence was presented at trial regarding any deviation from the established course of travel or any impediment to Albert's present or future use of the federally-owned section of the road. We will not give substance to a chimera on appeal, and we conclude that the issue raised by Hastetter is speculative and not properly before this Court.

**II**

¶19 *Did the District Court err in concluding that all elements necessary to establish a prescriptive easement were supported by clear and convincing evidence?*

¶20 A prescriptive easement for a right-of-way across another person's land is created by law based on a claim of title by adverse use. Section 70-19-409, MCA. The elements necessary to establish a prescriptive easement must be proven at the district court level by clear and convincing evidence. *Renner v. Nemitz*, 2001 MT 202, ¶ 13, 306 Mont. 292, ¶ 13, 33 P.3d 255, ¶ 13 (*citing Wareing v. Schreckendgust* (1996)*,* 280 Mont. 196, 206, 930 P.2d 37, 43). A claimant must establish open, notorious, continuous, uninterrupted, exclusive and adverse use of an easement for five years before the commencement of the action. *Renner*, ¶ 13; § 70-19-404, MCA. Montana has consistently followed the minority rule, which holds that open, notorious, continuous, uninterrupted and exclusive use raises a presumption that the use was also adverse. *Renner*, ¶ 13; *Wareing,* 280 Mont. at 209, 930 P.2d at 45*; Warnack v. Coneen Family Trust* (1996)*,* 278 Mont. 80, 83, 923 P.2d

6

1087, 1089*; Tanner v. Dream Island, Inc.* (1996), 275 Mont. 414, 425, 913 P.2d 641, 648; *Lemont Land Corp. v. Rogers* (1994), 269 Mont. 180, 185, 887 P.2d 724, 727-28; *Mountain View Cemetery v. Granger* (1978), 175 Mont. 351, 356, 574 P.2d 254, 257; *Glantz v. Gabel* (1923), 66 Mont. 134, 141, 212 P. 858, 860. However, mere occasional recreational use is insufficient to raise the presumption of adverse use. *Kessinger v. Matulevich* (1996), 278 Mont. 450, 458, 925 P.2d 864, 869 (*citing Public Lands Access Ass'n v. Boone & Crockett* (1993), 259 Mont. 279, 284, 856 P.2d 525, 527-28); *Keebler v. Harding* (1991), 247 Mont. 518, 523, 807 P.2d 1354, 1358.

¶1      To be "open and notorious," roadway use must give the landowner actual knowledge of the claimed right, or be of such a character as to raise a presumption of notice. *Hitshew v. Butte/Silver Bow County*, 1999 MT 26, ¶ 17, 293 Mont. 212, ¶ 17, 974 P.2d 650, ¶ 17 (*citing Mildenberger v. Galbraith* (1991), 249 Mont. 161, 167, 815 P.2d 130, 134-35). Open and notorious use can be established by showing that the condition of use was so obvious that the owner was not deceived and should have known of the claimant's use. *Mountain View Cemetery*, 175 Mont. at 356, 574 P.2d at 257.

¶21      Photographic evidence depicts a rutted, two-track road across the Hastetter Trust lands, which was the condition of the roadway at the time of trial. Even a cursory view of his property would have alerted Dr. Hastetter to regular use of this well-defined route leading to Albert's pasture. Albert testified that he traveled the road regularly since he purchased his half-section pasture in 1958. Although Dr. Hastetter stated that he did not often visit the Trust's properties, he testified in his deposition that he was aware of Albert's use of the road, he once met Albert along the road and he twice saw a pick-up that might have been Albert's on the road. Albert testified that he made no attempt to hide his road use through the years. We conclude that substantial evidence exists to

7

support the court's finding that Dr. Hastetter was aware of Albert's open and notorious use of the road.

¶22 To be "continuous and uninterrupted," the use of a claimed right must not be abandoned by the user or interrupted by an act of the landowner. *Hitshew*, ¶ 17 (*citing Granite County v. Komberec* (1990)*,* 245 Mont. 252, 257, 800 P.2d 166, 169). Although Albert used the road to visit his land every year since 1958, the frequency of his visits depended upon whether he ran cattle on his pasture in a particular year. Until 1974, Albert grazed cattle every year, which required that he move the animals from Highway #261 over the two-mile road to the pasture. He then drove his pick-up in every third day at about 10:00 a.m. to check the stock, and trucked the cattle out each fall by this same route. Although Albert later reduced his use when he leased his land during the 1980s and 1990s, he testified that he traveled across the road at least twice each year. The parties presented no evidence that indicated Albert abandoned his right to use the road or that Hastetter ever asserted a right hostile to Albert's easement. In fact, the court's finding that use was continuous and uninterrupted is undisputed.

¶23 "Exclusive" use does not mean that no one else may use the claimed roadway except the easement claimant. Instead, the element requires only that the claimant's right of use does not depend on the like right in others. *Wareing*, 280 Mont. at 208, 930 P.2d at 44 (*citing Hays v. De Atley* (1923), 65 Mont. 558, 561, 212 P. 296, 298). Others may have used the road as long as their use did not interfere with the claimant's use just as the owner of the servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement by the claimant. *Wareing*, 280 Mont. at 208, 930 P.2d at 44 (*citing Hays*, 65 Mont. at 561, 212 P. at 298).

¶24 Neither party offered evidence regarding regular use of the road by anyone other than Albert,

himself. Also, no evidence indicated that Dr. Hastetter, his land lessees or prior owners of the Trust's properties interfered in any way with Albert's travel on the claimed roadway. Consequently, the element of exclusive use also stands uncontested.

¶25    In summary, we conclude the District Court's factual findings are supported by substantial evidence and we affirm the conclusion that Albert established the elements for a prescriptive easement during the statutory five-year period. Consequently, Albert also enjoyed the presumption that his use was adverse to Hastetter's interest.

### III

¶26    *Did the District Court misapprehend and fail to give evidentiary value and effect to evidence that road use was permissive?*

¶27    The burden rests with the owner of the servient tenement to overcome a presumption of adverse use with proof by clear and convincing evidence that the use was permissive. *Renner,* ¶ 13. *See also Tanner*, 275 Mont. at 425, 913 P.2d at 648. Adverse use or assumption of control of a roadway is exercised under a claim of right and not as a mere license revocable at the pleasure of the servient landowner. *Hitshew*, ¶ 17 (*citing Public Lands Access Ass'n*, 259 Mont. at 283, 856 P.2d at 527). While the servient landowner must know about and acquiesce to the user's claim of right, *Public Lands Access Ass'n*, 259 Mont. at 283, 856 P.2d at 527, there exists no requirement under Montana law that a prescriptive easement claimant verbally communicate a hostile intent. *Warnack*, 278 Mont. at 83, 923 P.2d at 1089.

¶28    In this case, Hastetter's burden is heavy because Albert testified that he neither requested nor received permission from Dr. Hastetter or Hastetter's predecessors in interest to access his land by way of the road. In his deposition, Dr. Hastetter affirmed that he never received a request from Albert for permission and he never gave his written or verbal consent. On appeal, Hastetter argues

that the District Court overlooked substantive evidence that use was permissive on the theory that Dr. Hastetter permitted Albert to continue to use the road as a neighborly accommodation. Specifically, Hastetter contends the court misapprehended the letter sent by Albert's attorney to Dr. Hastetter on April 30, 1998; failed to give weight to the clear language of a legal instrument attached to the letter; and misconstrued the significance of three gates erected along the roadway.

¶29 We review a district court's findings of fact to determine whether substantial evidence supports those findings, and not to determine whether the evidence would support contrary findings. *Rafanelli v. Dale* (1996), 278 Mont. 28, 37, 924 P.2d 242, 248. Also, we will not substitute our judgment for that of the trial court where the issue relates to the weight given to certain evidence. *Warnack*, 278 Mont. at 85, 923 P.2d at 1090.

¶30 The text of the letter prepared by Albert's attorney and sent to Dr. Hastetter on April 30, 1998 reads:

> On behalf of my client, Lewis Albert, I am writing to request your cooperation in recognizing an easement for access to his property at Township 20 North, Range 59 East, Section 2 that adjoins your property at Township 20 North, Range 59 East, Section 1. Historically, access has been allowed through the truck track near the middle of the section. The enclosed easement relates to this track route.

Hastetter contends the phrase that "[h]istorically, access has been allowed" acknowledges the Hastetter Trust's legitimate title to the roadway and provides substantial proof that Albert traveled the route by permission.

¶31 The District Court did not find the letter offered conclusive proof of permissive use and stated:

10

The court concludes that the letter is ambiguous at best. Although the letter refers to use historically being allowed, it also requests recognition of the easement by the Defendant and does not request the granting of one. Taken as a whole, the Court does not conclude that this letter establishes that the prior use was permissive.

¶32 The apparent internal contradictions undermine the letter's evidentiary value. While Albert clearly sought cooperation in recognizing an existing easement, the statement that access had been allowed historically does infer prior permissive use. The court's determination that the April 30, 1998 letter was ambiguous and of little probative value is not an abuse of discretion.

¶33 Hastetter next argues that the District Court ignored evidence that Albert had attempted to purchase legal title to an easement. Hastetter claims that an unsigned legal instrument for an "Easement," which was attached to the April 30 letter, defeats Albert's claim of adverse use. The instrument proposes that Dr. Hastetter grant a road easement on the basis of "good and valuable consideration, the receipt and sufficiency of which is acknowledged." Hastetter cites *Blackfoot Land Development Co. v. Burks* (1921), 60 Mont. 544, 199 P. 685, for the proposition that an attempt to purchase legal title defeats a claim for adverse possession.

¶34 In *Blackfoot Land Development*, the prescriptive claimant offered to buy the land numerous times during his period of use and asked a prospective buyer for permission to continue to use the land if the purchase took place. The facts before us today present a very different situation. Albert consistently denied that he ever offered to purchase an easement from Dr. Hastetter and his denials remain undisputed. A written reference to prior receipt of consideration obtains legal import only when such consideration actually is offered or accepted. In this case, Dr. Hastetter never received or accepted "good and valuable consideration" for an easement. Consequently, the reference to

11

consideration in the easement instrument does nothing to diminish Albert's claim of adverse use.

¶35     Finally, Hastetter contends that the District Court failed to consider the evidentiary value of three gates along the road on the Hastetter Trust lands that obstruct travel.  Hastetter cites *Maynard v. Bara* (1934), 96 Mont. 302*, 30 P.2d 93; *Peasley v. Trosper* (1937), 103 Mont. 401, 64 P.2d 109; and *Kessinger*, 278 Mont. 450, 925 P.2d 864.  In each of these cases claimants did not enjoy the presumption of adversity by either failing to establish open, notorious, continuous and uninterrupted use of the contested roadways or using the road for recreational purposes only.  In the absence of the legal presumption of adverse use, this Court stated in each case that the presence of unlocked gates that a traveler must open and close so as to leave the gates as found constituted "strong evidence of permissive use."

¶36     A concurrent line of cases cited by Albert held that the presence of unlocked gates was not enough to rebut the presumption of adverse use when the gates were only closed during the summer months and were constructed to control cattle rather than stop human traffic.  *Kostbade v. Metier* (1967), 150 Mont. 139, 145, 432 P.2d 382, 386.  *Accord*, *Parker v. Elder* (1998), 233 Mont. 75, 80, 758 P.2d 292, 294; *Lamont Land Corp*., 269 Mont. at 186, 887 P.2d at 728.

¶37     Albert testified that he ran cattle on his land abutting the Hastetter Trust properties and constructed the gate across the road at the boundary fence to contain his livestock.  Albert's deposition testimony also confirms that the fences and two other gates along the roadway on the Hastetter Trust land were constructed for the purpose of livestock control:

> Q. "Okay.  Now, normally when you go through there, do you have to open and close all three gates?
>
> A. You say normally.  If there's no stock in there, the chances are someone has left the gates open, so its not necessary to stop and open them and close them.  If there is stock in either side, why, they're opened and closed each time.

12

¶38 Given the obvious use of the gates to control livestock, we conclude the District Court did not abuse its discretion when it refrained from scrutinizing the gates as evidence of permissive use.

**IV**

¶39 *Did the District Court err in considering the deposition testimony of Dr. N.J. Hastetter with "great distrust?"*

¶40 Dr. Hastetter died prior to trial, thus his deposition was entered into evidence. The deposition consisted of the original transcript from the May 18, 1999 interview by Albert's attorney and three pages of corrections signed and submitted by Dr. Hastetter on June 24, 1999. The correction sheets contained numerous substantive changes to the original testimony. Because Dr. Hastetter's credibility was not directly attacked at trial, Hastetter argues that the judge was not at liberty to regard his amended testimony with "great distrust." Citing § 26-1-302, MCA, which states, "a witness is presumed to speak the truth," Hastetter contends that Dr. Hastetter's original and amended testimony should stand as probative evidence for every fact stated.

¶41 Albert counters that Dr. Hastetter's entire deposition, which includes the correction pages, was appropriately entered as evidence. Rather than disregard any part of the deposition, the District Court considered the original testimony with the changes and correctly viewed the corrections with distrust when they conflicted with the original answers.

¶42 This Court has not had prior occasion to examine issues arising from substantive changes made to a deposition. Rule 30(e), M.R.Civ.P., outlines the following procedure of amending deposition testimony:

> When the testimony is fully transcribed the deposition shall be submitted to the
> witness for examination and shall be read to or by the witness, unless such

13

examination and reading are waived by the witness and by the parties. Any changes

in form or substance which the witness desires to make shall be entered upon the

deposition by the officer with a statement of the reasons given by the witness for

making them.

These provisions are identical to and modeled upon Rule 30(e) of the Federal Rules of Civil

Procedure, which confers federal court interpretations of the federal rule persuasive authority. *U.S.*

*Fidelity and Guar. Co. v. Rodgers* (1994)*,* 267 Mont. 178, 181-82, 882 P.2d 1037, 1039. Federal

courts that have addressed altered deposition testimony have overwhelmingly concluded that a

witness may make "any changes in form or substance which the witness desires, even if the changes

contradict the original answers or even if the deponent's reasons for making the changes are

unconvincing." *Lugtig v. Thomas* (N.D. Ill. 1981)*,* 89 F.R.D. 639, 641 (citations and punctuation

omitted). *See also Podell v. Citicorp Diners Club* (2nd Cir. 1997)*,* 112 F.3d 98, 103. In *Lugtig,* the

court delineated the following procedure for admitting a deposition that contains changes:

> The original answer to the deposition questions will remain part of the record and
> can be read at trial. [Citations omitted.] Nothing in the language of Rule 30(e)
> requires or implies that the original answers are to be stricken when changes are
> made. In fact, the Rule's instruction that the changes be made "upon the deposition"
> implies that the original answers will remain. Policy also supports that conclusion.
>
> The witness who changes his testimony on a material matter between the giving of
> his deposition and his appearance at trial may be impeached by his former answers,
> and the cross-examiner and the jury are likely to be keenly interested in the reasons
> he changed his testimony. There is no apparent reason why the witness who changes
> his mind between the giving of the deposition and its transcription should stand in a
> better case. *Wright v. Miller*, General Practice & Procedure § 2118.

*Lugtig*, 89 F.R.D. at 641-42.

¶43    We hold that the above statements set forth a correct application of Rule 30(e), M.R.Civ.P.,

and conclude that the District Court properly admitted Dr. Hastetter's entire deposition into

14

evidence. However, because certain alterations or elaborations Dr. Hastetter made to his deposition answers conflict with his original testimony and his death foreclosed the opposing party's right to cross-examine him at trial, an issue arises regarding the evidentiary value of these substantive changes.

¶44    Albert cites to *J.H. Harvey Company v. Reddick* (Ga. 1999), 522 S.E. 2d 749, for the proposition that unresolved contradictions between original deposition testimony and corrections to the deposition are to be construed against a party-deponent. In interpreting § 9-11-30(e), Georgia Code Ann., which includes the same provision for deposition change as Rule 30(e), M.R.Civ.P., the *Harvey* court concisely summarized the reasoning of the federal courts as follows:

> There are several important safeguards which curtail abuse [of the right to amend a deposition] on the part of the deponent. First, the deponent's original answers remain part of the record and can be read at trial to impeach the witness or for further clarification. (Citation omitted.) *Lugtig*, supra at 641. This is because "a deposition is not a 'take home examination' and an 'errata sheet' will not eradicate the import of previous testimony taken under oath." *Rois v. Welch*, 856 F. Supp. 1499, 1502 (D.Kan. 1994), *aff'd, Rois v. Bigler*, 67 F.3d 1543 (10th Cir. 1995). Second, if the changes are "so substantial as to cause the deposition to become incomplete or useless without further testimony," then the examiner may reopen the deposition and propound further questions to the witness concerning the nature and reason for the changes. *Allen & Co.*[*v. Accidental Petroleum Corp*. (S.D.N.Y. 1970), 49 F.D.R. 337] at 341; see also *Lugtig*, supra at 642.

*J.H. Harvey Company*, 522 S.E. 2d at 755.   The Georgia court held that where the deponent is a party, his self-contradictory, vague or equivocal testimony must be construed against him and cannot create an issue of fact for the purpose of summary judgment unless the conflicts are adequately explained. *J.H. Harvey Company*, 522 S.E. 2d at 755.

¶45    Dr. Hastetter's deposition similarly challenged the District Court with conflicting evidence without the benefit of witness cross-examination. Because any out-of-court statement by a party is an admission, when substantive changes or contradictions exist between the original and corrected

15

deposition that are not adequately explained by the deponent, additional testimony before the trier of fact may be necessary to resolve the evidentiary conflicts. The right to cross-examine witnesses is fundamental to our judicial process. To guard against abuse of the right to make substantive changes to deposition testimony when the opposing party is not present, the opposing party has the right to cross-examine the deponent at trial. In the event that a party-deponent is unavailable to address apparent conflicts in amended deposition testimony, the district courts must exercise sound discretion in weighing the value of the evidence. Rather than direct our courts to construe conflicting testimonial evidence in any particular manner, we have consistently stated that the district courts are in the best position to observe and judge the credibility of witnesses and we will not second guess a court's determination regarding the strength and weight of conflicting testimony. *Renner,* ¶ 12 (*citing Double AA Corp. v. Newland & Co*. (1995), 273 Mont. 486, 494, 905 P.2d 138, 142).

¶46    This Court also recognizes the importance of spontaneous deposition testimony. Depositions serve a purpose distinct from interrogatories, which anticipate deliberate responses. For example, we held in *Hart-Albin Co. v. McLees, Inc*. (1994), 264 Mont. 1, 879 P.2d 51, that portions of a videotaped deposition of a party could be entered into evidence at trial in order to "allow the jury to observe frank and unrehearsed answers to questions." *Hart-Albin*, 264 Mont. at 8, 879 P.2d at 55.

¶47    The following excerpts from Dr. Hastetter's original and amended testimony discuss Hastetter's neighborly accommodation for Albert's use of the road crossing the Trust's properties:

Original answer:
Q. "Well, what neighborly things did you do?"
A. "None."

Changed answer:
A. I suspected at various times, Mr. Lewis Albert crossed my lands to

16

go to his land, and I thought it was neighborly that I would allow him to cross my lands, though I have no personal knowledge of Mr. Albert crossing my lands on the trail. Throughout the years at various times, I had the Division fence repaired between my lands and Mr. Albert's land, and allowed cattle being grazed upon his land, to cross onto my land for water. I have thought of these things after the Deposition, and add them to my answer.

Original answer:
Q. "In your answer you say that you allowed Mr. Albert to use the road?"
A. "I didn't allow him. I didn't disallow him."

Changed answer:
A. I didn't speak to Mr. Albert about his using the trail across my land. I thought it was just neighborly to allow him to use the trail if he needed to get to his land. It was just neighborly, for him to pass through my lands to get to his land.

Original answer:
Q. "You said you didn't allow him or disallow him. You did nothing about his use of the roadway, is that correct?"
A. "He used it. It was good neighbors ----."

Changed answer:
A. I never discussed with Mr. Albert his using the trail on my lands to get to his land, until I received a request from his attorney Mrs. Savage, and Mr. Albert's use of the trail, was okay by me, as a neighbor. I disagree that I knew at anytime Mr. Albert would be claiming his use would be adverse to my ownership, or possession. I was accommodating to Mr. Albert, and Mr. Albert never discussed with me using the trail adverse or hostile to my ownership as the Trustee or Owner.

¶48 The only explanation Dr. Hastetter offered for the changes on the correction sheets was, "I have thought of these things after the Deposition and add them to my answer." The District Court

17

found Dr. Hastetter's amended testimony substantively altered his original responses, and stated:

> Although Dr. Hastetter in his deposition corrections indicates he thought it was just neighborly to allow use of the trail, the Court views such statement with great distrust since it is placed on a correction page, not subject to cross-examination and conflicts with the answers that were given during the deposition itself.

¶49 Albert testified that hard feelings developed between the parties from the beginning of Hastetter's ownership of the land adjacent to Albert's pasture. Disputes arose over Albert's use of water from Hastetter's dammed reservoir, run-off from Hastetter's reservoir that flooded Albert's well house, and Dr. Hastetter's refusal to contribute to the repair of the fence between the properties. Albert also testified that Dr. Hastetter called him a number of times to retrieve wandering stock from Hastetter's land without first checking the cattle brands to discover the animals did not belong to Albert. The parties never socialized and never helped one another with branding, cattle moving or fence maintenance. In his original deposition, Dr. Hastetter testified that he was not aware of anything that Albert had done for him "except sue me."

¶50 Rather than finding Albert used the roadway with Hastetter's tacit permission under a theory of neighborly accommodation, the District Court found the "better evidence to be that Albert used the roadway because he wanted to and no one ever stopped him from doing so." Where substantial credible evidence supports the trial court's findings, we will sustain the findings on appeal because the trial court is in the best position to weigh the evidence, assess the credibility of witnesses and determine whether use was prescriptive or permissive in the face of a claim of neighborly accommodation. *Swandal Ranch Co. v. Hunt* (1996), 276 Mont. 229, 236, 915 P.2d 840, 844-45; *Warnack*, 278 Mont. at, 83-84, 923 P.2d at 1089-90; *Rafanelli,* 278 Mont. at 33, 924 P.2d at 246.

18

¶51 Dr. Hastetter was not available to explain to the court the reasons for the extensive changes he made to his deposition testimony. Without the opportunity to cross-examine the witness, the court appropriately exercised its discretion in dismissing the theory of neighborly accommodation based on the weight of the evidence presented at trial, which depicted neither a friendly nor helpful relationship between Albert and Dr. Hastetter. We conclude that the District Court did not abuse its discretion by viewing Dr. Hastetter's deposition changes with "great distrust" when the amended answers contradicted or conflicted with Dr. Hastetter's original testimony.

## CONCLUSION

¶52 We hold the District Court's conclusion that a prescriptive easement enured to the benefit of Albert's half-section pasture is supported by clear and convincing evidence. We note that the court correctly delineated the statutory five-year period of adverse use as commencing when Albert took possession of his pasture and began to use the road regularly in 1958. Accordingly, Albert gained legal title to the easement prior to the purchase of the servient tenement by Dr. Hastetter. Consequently, the claim that Albert's use had been with Hastetter's permission is without legal significance. The designation of the statutory period beginning in 1958 was overlooked on appeal by both parties and does not affect the judgment.

¶53 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER
/S/ JIM RICE