Patricia RICCI; Patrick A. Ricci, Plaintiffs–Appellants,

v.

AB VOLVO; Lance Dickson Motors, Inc.; Volvo Car Corporation; Volvo Cars Limited, Inc.; Volvo Cars of North America, Inc., Defendants–Appellees.

No. 03–15635.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 2004.

Decided July 27, 2004.

Peter C. Neumann, Reno, NV, Larry E. Coben, Cohen & Associates, Scottsdale, AZ, for Plaintiffs–Appellants.

Greg W. Marsh, Esq., Las Vegas, NV, David W. Graves, Jr., Bowman & Brooke,

Minneapolis, MN, for Defendants–Appellees.

Before: REINHARDT, NOONAN, and PAEZ, Circuit Judges.

## MEMORANDUM *

On July 6, 1997, a Volvo 740 sedan driven by Patrick Ricci drifted off the highway and rolled over three times. He suffered spinal compression from the crushing of the roof and was rendered permanently quadriplegic. Ricci and his wife, Patricia, subsequently filed this products liability action against Volvo Car Corporation and Volvo Cars of North America LLC ("Volvo") in Nevada. They alleged that the Volvo 740's roof did not sufficiently withstand the impact of a rollover and that the seat belt system was defective because Ricci's head struck the roof of the vehicle. They also alleged that Volvo fraudulently and maliciously misrepresented the safety of the vehicle in its advertising, warranting an award of punitive damages. The jury returned a verdict for Volvo.

## I

■ On appeal, the Riccis argue that the district court improperly instructed the jury on the misuse defense. We agree. Under Nevada law, misuse is only a defense to a products liability action when the use is not reasonably foreseeable. *See Andrews v. Harley Davidson, Inc.,* 106 Nev. 533, 796 P.2d 1092, 1095 (1990) (stating that negligent driving of a vehicle, including the driving of a vehicle while intoxicated, is a foreseeable risk against

which a manufacturer is required to take precautions). Falling asleep at the wheel is reasonably foreseeable, as the district court properly recognized. Moreover, "contributory negligence is not a defense in a strict liability case where the issue is whether the design of a vehicle is crashworthy." *Id.*

■ The challenged instruction improperly directed the jury's attention to the driver's negligent conduct, as did defense counsel on other occasions. In opening argument, defense counsel told the jury that the car drifted off of the highway at 3:45 a.m., traveling at speeds of 70–80 miles per hour, and that there were no skid marks. From this argument, the instruction, and defense counsel's emphasis throughout the trial on the severity of the accident, it is likely that the jury improperly concluded that Mr. Ricci had somehow misused the vehicle. In the absence of legally sufficient evidence that the vehicle was subjected to an improper as opposed to a negligent use, it is error to give the instruction in question. *See Hart–Albin Co. v. McLees Inc.,* 264 Mont. 1, 870 P.2d 51, 54 (1994) (holding that where corporate representative testified that he was aware that the product could possibly be misassembled, it was error to instruct jury on misuse defense). Because there was no evidence in the record to support the misuse instruction and because the error in instructing the jury on the misuse defense likely affected the verdict, we reverse. *See McMurray v. Deere & Co., Inc.,* 858 F.2d 1436, 1444 (10th Cir.1988) (holding that a misuse instruction was prejudicial because it was not possible to ascertain from the verdict whether there was some basis for the jury's finding other than an

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

improper conclusion that the defendant misused the product).

## II

The Riccis next argue that the district court erred in admitting evidence that the Volvo 740 complied with Federal Motor Vehicle Safety Standard (FMVSS) 216, which prescribes the minimum roof strength standard for automobiles. Under Nevada law, the defectiveness of a product is determined solely by the consumer expectations test. *See Shoshone v. Coca–Cola Bottling Co.*, 82 Nev. 439, 420 P.2d 855, 857–58 (1966). Courts are split as to the relevance, and hence the admissibility, of evidence of a manufacturer's compliance with government standards in a strict liability action predicated on the consumer expectations test. *Compare Bailey v. v. & O Press,* 770 F.2d 601, 607–609 (6th Cir. 1985) (holding compliance with government standards irrelevant "where the product's condition and consumer expectations are the central inquiries and liability may be imposed regardless of the degree of care exercised by the manufacturer") (applying Ohio law); *Harsh v. Petroll & Hac,* 840 A.2d 404, 425 (Pa.2003) (same under Pennsylvania law); *Grimshaw v. Ford Motor Co.,* 119 Cal.App.3d 757, 803–04, 174 Cal.Rptr. 348 (1981) (same under California law), *with Schwartz v. American Honda Motor Co., Inc.,* 710 F.2d 378, 383 (7th Cir.1983) (stating that "compliance with applicable federal standards is relevant, though not conclusive, in a products liability case.") (applying Illinois law); *Lorenz v. Celotex Corp.,* 896 F.2d 148, 150–151 (5th Cir.1990) (same under Texas law); *see generally* 47 A.L.R.4th 621 *Products Liability: Admissibility of Defendants Evidence of Industry Custom or Practice in Strict Liability Action.*

The Nevada Supreme Court has held that evidence of government standards is admissible if offered by the plaintiff for the purpose of rebutting a defendant's "state of the art" defense by showing that alternative safer designs either existed, or were commercially feasible, at the time of manufacture. *See Robinson v. G.G.C., Inc.,* 107 Nev. 135, 808 P.2d 522, 526–527 (1991). However, as Volvo's closing argument illustrates, it did not introduce the government standards evidence for that purpose. Rather, Volvo used it to argue to the jury, in essence, that its meeting and surpassing of the minimal government roof strength standard should act as a defense to liability. Nevada has yet to resolve whether it is proper to permit a defendant, as opposed to a plaintiff, to introduce government standards evidence for this or any other purpose in a strict liability action. As Nevada does not permit the introduction of concepts of fault into strict liability actions, it is likely that the Nevada Supreme Court would give significant weight to the extent to which such evidence shifts the jury's inquiry away from what the consumer expects to what the manufacturer is doing. *See Shoshone,* 420 P.2d at 857–58. In view of our determination to reverse on other grounds, however, we need not resolve this rather difficult and unresolved issue here.

## III

The Riccis also argue that the district court improperly admitted "state of the industry" evidence showing that other vehicles had either the same or lower strength-to-weight ratios as the Volvo 740. As with government standards, Nevada courts have not addressed the relevance of "state of the industry" evidence as a defense in a products liability action predicated on the consumer expectations test. In resolving this issue, Nevada might conclude that whether the Volvo 740 performed as well or even better than *some*

cars has little bearing on the question of whether the vehicle was as crashworthy as an ordinary consumer would expect, absent some evidence that ordinary consumers are aware of how those cars perform and base their expectations upon that knowledge. *See Lenhardt v. Ford Motor Co.*, 102 Wash.2d 208, 683 P.2d 1097, 1100 (1984) (superceded by statute). Again, however, in view of our conclusions above, we need not resolve this issue here.[1]

## IV

The Riccis also argue that the district court erred in refusing to instruct the jury that it could consider Volvo's advertising in determining consumer expectations. Trial courts have a duty to formulate jury instructions so that they fairly and sufficiently address the issues of a case. *Mena v. City of Simi Valley*, 332 F.3d 1255, 1267 (9th Cir.2003). This includes the duty to "give instructions which are meaningful, not in terms of some abstract case, but which can be understood and given effect by the jury once it resolves the issues of fact which are in dispute." *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed.Cir.2004). Given the facts and circumstances of the present case, the form instruction given to the jury was not particularly meaningful or self-explanatory, because it failed to inform the jury that Volvo's advertising could be considered within the "ordinary knowledge of the community." *See, e.g., Leichtamer v.*

*American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568, 578 (1981) ("The commercial advertising of a product will be the guiding force upon the expectations of consumers with regard to the safety of the product, and is highly relevant to a formulation of what those expectations might be."). However, in view of our conclusions above, we need not decide whether it was an abuse of discretion for the district court to have failed to provide the jury with that specific information here. We note, nevertheless, that the instruction requested by the Riccis would have been helpful to the jurors in this case, and we believe it would be appropriate for the judge to grant their request should the question arise again.

## V

The Riccis also argue that the district court erred in refusing to modify the pretrial order to allow them to try claims for negligent and fraudulent misrepresentation. In determining whether to modify a pretrial order, a court should consider the four factors outlined in *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 887 (9th Cir.1981). Here, the district court summarily denied the request, stating that the claims were not set forth in the complaint or the pretrial order, without considering any of these factors, even though the claims were duplicative of the punitive damage claim, involved similar facts to those already covered by the order, and did not require presentation or

1. We do, however, reject Volvo's contention that the Riccis "opened the door" to the challenged evidence by introducing testimony that the Volvo 740 ranked towards the bottom of comparable cars with respect to roof strength. Although some of the evidence offered by the plaintiffs went beyond showing that reasonable safer designs existed, a party does not open the door to challenged evidence by introducing countervailing evidence following the court's ruling that the challenged evidence will be admitted. *See United States v.*

*Pineda–Torres*, 287 F.3d 860, 865 (9th Cir. 2002) (rejecting argument that defendant "opened the door" to improperly admitted evidence where the trial court had already denied defendant's motion *in limine* to exclude the evidence); *Andrews*, 796 P.2d at 1092 (where trial court erroneously denied plaintiff's motion *in limine* to exclude evidence of intoxication, plaintiff had no choice but to introduce evidence that he was not intoxicated, and thus he did not "open the door" to evidence of intoxication).

consideration of additional evidence. In view of our conclusions above, we need not decide whether the court's refusal to modify the order constituted an abuse of discretion. However, the Riccis should be allowed to present these claims on remand.[2] *See Id.; Manbeck v. Ostrowski,* 384 F.2d 970, 975–76 (D.C.Cir.1967).

## VI

For the foregoing reasons, we RE-VERSE and REMAND for a new trial. REVERSED and REMANDED.

---

**2.** The Riccis also contend that the district court erred in allowing Volvo's experts to testify regarding National Highway and Traffic Safety Administration statistics showing that only two percent of rollovers involve three or more rolls. The district court correctly ruled that because the rollover statistics were otherwise inadmissible, they could be used by the experts only to inform their opinions. *See* Fed.R.Evid. 703 (stating that if otherwise inadmissible facts or data are "of a type reasonably relied upon by experts in the particular field," they can be used by such expert to form his opinion). The Riccis assert that the expert's disclosure of the statistical information to the jury was erroneous be-cause the probative value of the admitted evidence did not *substantially outweigh* the prejudicial effect. *Id.* ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). In view of our decision to reverse on other grounds, we do not decide that issue here.

