No. 01-780

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 191

JERRY T. RAY,

        Plaintiff and Appellant,

   v.

GAYLE B. NANSEL and PAUL G. BROMENSHENK,
as co-trustees under The Last Will and Testament of
Gerald Bromenshenk, DARLENE F. BROMENSHENK,
ZIMMERMAN FAMILY LIMITED PARTNERSHIP,
and JOHN DOES 1 THROUGH 10,

        Defendants, Respondents and Cross-Appellants.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Gregory R. Todd, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Jon E. Doak, Doak & Associates, P.C., Billings, Montana

        For Respondents/Cross-Appellants:

        Reneé L. Coppock and James R. Hintz, Crowley, Haughey, Hanson, Toole &
        Dietrich, P.L.L.P., Billings, Montana


        Submitted on Briefs:  March 21, 2002

        Decided:     August  29,  2002

Filed:


                                    Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Jerry T. Ray appeals from a Judgment of the Thirteenth Judicial District Court, Yellowstone County. Gayle B. Nansel, Paul G. Bromenshenk, Darlene F. Bromenshenk, the Zimmerman Family Limited Partnership and John Does 1 through 10 (collectively, the "Defendants") cross-appeal from the District Court's Memorandum and Order. We affirm in part and reverse in part.

¶2 The following issues are dispositive of this appeal:

¶3 1. Did the District Court err in concluding that Ray had failed to prove a prescriptive easement over the Bromenshenk Property?

¶4 2. Did the District Court err in concluding that Ray had failed to prove a prescriptive easement over the Zimmerman Property?

¶5 3. Did the District Court err in reducing the award of the Defendant's attorneys' fees?

¶6 4. Did the District Court err in disallowing costs claimed by the Defendants?

## BACKGROUND

¶7 This dispute revolves around Ray's use of a wastewater ditch (the "Wastewater Ditch") over the Defendants' properties in Yellowstone County, Montana. In November 1988, Ray acquired land (the "Ray Property") from William Deines and William Deines, Jr. (collectively, the "Deines"). The Deines still own property (the "Deines Property") that abuts the southern boundary of the Ray Property.

¶8    The Zimmerman Family Limited Partnership owns property (the "Zimmerman Property") that is roughly to the southeast of the Ray Property.  Their property borders the eastern edge of the Deines Property.  They leased this property to John Zimmerman during the time encompassed by this dispute.  Gayle B. Nansel, Paul G. Bromenshenk and Darlene Bromenshenk collectively own property (the "Bromenshenk Property") to the east of and adjacent to the Zimmerman Property.

¶9    Before Ray acquired his property, the Deines grew crops on the Ray Property from 1975 until approximately 1989.  When irrigating these crops, the Deines created wastewater, which drained along the Wastewater Ditch.   The ditch originated on the Ray Property, traveled along the northern edge of the Deines Property and then crossed the Zimmerman and Bromenshenk properties.  It finally drained into a larger irrigation ditch on the Bromenshenk Property.

¶10  Each year, after the Deines were finished irrigating, John Zimmerman would close the Wastewater Ditch during the first or second week of August.  He would do this by plowing over the ditch on the Zimmerman Property.  The following spring, the Deines would re-pull the ditch along substantially the same route.   The Bromenshenks did not close the ditch across their property, so the Deines did not need to re-pull it each year.  This arrangement was largely a matter of neighborly accommodation.

¶11  When Ray began farming and irrigating his land, however, the relationship between John Zimmerman and Ray quickly eroded. Apparently John Zimmerman opened the Wastewater Ditch in 1990 and

3

possibly again in 1991.  In 1992, Ray pulled the Wastewater Ditch across the Zimmerman Property.  To prevent a conflict with John Zimmerman, Ray asked an on-duty Yellowstone County Sheriff Deputy to accompany him while he pulled the ditch.

¶12  On May 4, 1993, the Defendants' attorney sent Ray a letter revoking permission to use the Wastewater Ditch across the Zimmerman Property.  Despite the letter, Gary Zemlicka, who was working at the direction of Ray, pulled the Wastewater Ditch across the Zimmerman Property in 1993.  Ray ran wastewater across the ditch at least twice that year.  Zemlicka also pulled the Wastewater Ditch across the Zimmerman Property in 1994 and 1995.

¶13  During this time, John Zimmerman confronted Zemlicka about pulling the Wastewater Ditch and informed him that Ray did not have permission to pull the ditch.  Zemlicka occasionally discovered that someone had obstructed the culvert leading onto the Zimmerman Property.  Each time Zemlicka discovered an obstruction, he or Ray would remove the obstruction and continue running water through the ditch.

¶14  Ray again pulled the Wastewater Ditch across the Zimmerman Property in 1996.  That August, John Zimmerman plugged the culvert leading onto the Zimmerman Property.  As a result, Ray again called a Yellowstone County Deputy Sheriff.  A deputy responded, but refused to intervene.  He informed Ray and John Zimmerman that their dispute was a civil matter and that they should contact their attorneys.

4

¶15 In September, Ray again attempted to flow water through the Wastewater Ditch. Because of the obstruction, however, the water flooded the Zimmerman Property. Upon seeing this, Paul Bromenshenk pulled a new ditch south into another wastewater ditch to avoid further flooding.

¶16 On January 20, 2000, Ray sued the Defendants to quiet title to a prescriptive easement across the Zimmerman and Bromenshenk Properties. Ray also claimed that the Defendants had obstructed the easement and sought damages, an injunction to restore the ditch and attorney's fees. The Defendants counterclaimed to quiet title to their properties and to obtain trespass damages and an injunction. Before trial, however, the parties agreed to dismiss their respective damages claims.

¶17 The District Court held a trial on March 26 and 27, 2001. On May 30, 2001, the court held that Ray did not have a prescriptive easement across either the Zimmerman or Bromenshenk Properties. It also granted the Defendants an injunction restraining Ray from running wastewater across their lands and held that they were entitled to costs and attorney's fees.

¶18 The Defendants then filed a Memoranda of Costs & Disbursements. Ray objected to the fees and costs claimed. The court held a hearing on July 13, 2001, and, on August 2, 2001, entered a judgment granting the Defendants certain costs and attorney's fees. Ray appealed the court's judgment and the Defendants cross-appealed the court's award of attorney's fees and costs.

STANDARD OF REVIEW

¶19 We review the findings of a district court sitting without a jury to determine if the court's findings were clearly erroneous. *See* Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *See Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, ¶ 24, 28 P.3d 467, ¶ 24. Additionally, we must view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *See Guthrie*, ¶ 24.

¶20 We review a district court's conclusions of law to determine whether those conclusions are correct. *See Guthrie*, ¶ 24.

ISSUE ONE

¶21 Did the District Court err in concluding that Ray had failed to prove a prescriptive easement over the Bromenshenk Property?

¶22 An easement is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose. *See Ruana v. Grigonis* (1996), 275 Mont. 441, 447, 913 P.2d 1247, 1251; *Kuhlman v. Rivera* (1985), 216 Mont. 353, 358, 701 P.2d 982, 985. To establish a prescriptive easement, a claimant must establish open, notorious, continuous, uninterrupted, exclusive and adverse use for five years. *See* § 70-19-404, MCA; *Renner v. Nemitz,* 2001 MT 202, ¶ 13, 306 Mont. 292, ¶ 13, 33 P.3d 255, ¶ 13.

6

The claimant must prove these elements by clear and convincing evidence.  *See Renner,* ¶ 13.

¶23  We have consistently followed the rule that open, notorious, continuous, uninterrupted and exclusive use raises a presumption that the use was also adverse.  *See Albert v. Hastetter*, 2002 MT 123, ¶ 20, 310 Mont. 82, ¶ 20, 48 P.3d 749, ¶ 20.  A claimant's failure to prove any element for the full prescriptive period is fatal to the entire claim.  *See Grimsley v. Estate of Spencer* (1983), 206 Mont. 184, 196, 670 P.2d 85, 91-92.  Although its reasoning was wrong, the District Court correctly held that Ray's use of the Wastewater Ditch was not adverse during any period of his use.

¶24  In reaching its conclusion, the court explained that Ray had entered upon the Bromenshenk Property no more than three times to maintain the Wastewater Ditch.  Such use, the court reasoned, did not provide actual or presumed notice of a hostile claim of right.  The District Court, therefore, concluded that Ray's use of the Wastewater Ditch over the Bromenshenk Property was not open, notorious and adverse during any period of his use.

¶25 The court improperly focused on Ray's entry onto the Bromenshenk Property.  Ray is not seeking an easement to walk across the Bromenshenk Property.  He is seeking an easement to flow water through the Wastewater Ditch on the Bromenshenk Property.  The proper focus, therefore, is whether Ray's efforts to drain wastewater through the ditch were open, notorious or adverse.

¶26 Use is "open and notorious" when it gives the landowner actual knowledge of the claimed right, or is of such a character as to raise a presumption of notice. *See Albert*, ¶ 21; *Hitshew v. Butte/Silver Bow County*, 1999 MT 26, ¶ 17, 293 Mont. 212, ¶ 17, 974 P.2d 650, ¶ 17. Furthermore, when deciding the issue of adverse use, the court must determine whether the owner of the servient estate produced clear and convincing evidence that the use was permissive. *See Albert*, ¶ 28. Although the District Court erred in concluding that Ray's use was not open and notorious, it was correct in concluding that his use was not adverse.

¶27 Paul Bromenshenk testified at trial that he was aware of the Wastewater Ditch running across his property. He was also aware that Ray ran water across the ditch. In particular, Paul Bromenshenk testified as follows:

Question:     In your experience, who has used the wastewater ditch on the Zimmerman and Bromenshenk properties?

Answer:     Who has ran water across that ditch? I know Bill Deines has, Jerry Ray, I guess, and Johnny [Zimmerman]. And that's all to my knowledge that – yeah, that's all I know, yeah.

¶28 Although Paul Bromenshenk clearly should have been aware of Ray's use of the ditch, Ray's use of the ditch was nevertheless permissive. While Ray did not abide by all of the conditions requested of him when using the Wastewater Ditch, the evidence is clear that Ray's use of the ditch remained permissive. Paul

8

Bromenshenk testified that he never withdrew permission to run water through the Wastewater Ditch:

> Question: Have the owners of the Bromenshenk Property ever withdrawn permission or refused to let Mr. Ray run wastewater across the Bromenshenk Property?
>
> Answer: No, we've never even – up until this – until that – until we received the [complaint] in the mail, there was no contact or stopping or anything of wastewater on our property.

¶29 Ray also testified as to the permissive nature of his use:

> Question: Did you ever personally or through an agent tell the Bromenshenks that you were using the ditch across their land under a claim of right and not by permission?
>
> Answer: There was at least one time I had visited with Paul. Paul informed me that I wasn't the only one having trouble with John Zimmerman. This was a few years back.
>
> Question: Okay. But did you tell him –
>
> Answer: And Paul informed me that I had a right to run my water. Got along pretty good. Bought some hay from him for several years. And that's all I can remember of a conversation like that.
>
> Question: Did you tell him that you had a right – did you tell him you had a right and you were not using his ditch by permission?
>
> Answer: I don't recall that, ma'am.

¶30 We will affirm a district court's ruling if the court reaches the correct result, even if it does so for the wrong reason. *See Eschenbacher v. Anderson*, 2001 MT 206, ¶ 40, 306 Mont. 321, ¶ 40, 34 P.3d 87, ¶ 40. While the District Court incorrectly focused on Ray's entry onto the Bromenshenk Property, the record supports its conclusion that Ray's use was not adverse. Thus, the court did not err in concluding that no prescriptive easement existed across the Bromenshenk Property.

ISSUE TWO

9

¶31 Did the District Court err in concluding that Ray had failed to prove a prescriptive easement over the Zimmerman Property?

¶32 The District Court held that Ray did not show by clear and convincing evidence that his use of the Wastewater Ditch across the Zimmerman Property was continuous and uninterrupted for the necessary five-year period. Although both parties point to several inconsistent findings made by the court, we need not concern ourselves with these discrepancies. For purposes of this appeal, determining whether Ray's use was continuous and uninterrupted is sufficient.

¶33 For use "[t]o be 'continuous and uninterrupted,' the use of a claimed right must not be abandoned by the user or interrupted by an act of the landowner." *Albert*, ¶ 23. The court concluded that Ray's adverse use began in 1992. We agree. While Ray argues that the prescriptive period began at least as early as 1991, the evidence does not support that conclusion. Instead, Ray's testimony suggests that his use of the Zimmerman property was permissive in 1990 and 1991. Specifically, Ray testified:

```
Question:      So he opened [the Wastewater Ditch] again
               in 1991 according to your letter?
Answer:    Might have been 1990.
Question:       Well, there's two times there?
Answer:    (Reviewing document.)  Okay.  He must have
               tried to do it each time earlier in the season
               according to this.
Question: But did you not testify that you opened it in
               1991?
Answer:    Yes,  and  I  did.   Went  right  back  and
               straightened up the ditch that he did.
Question: So twice you straightened up the ditch?
Answer:    Probably more than twice.
Question: So he probably plowed a ditch for you more
               than twice?
```

10

Answer:   He would have been plowing on the first time through, which would have been earlier in the year.

¶34  The act of opening the Wastewater Ditch in 1990 and 1991 implies that John Zimmerman permitted Ray to use the Wastewater Ditch as part of the neighborly accommodation that began when the Deines farmed the Ray Property.  Ray counters this conclusion by arguing that the court's own findings better support the alternate conclusion that the prescriptive period began as early as 1991.

¶35  The court noted that Ray re-pulled and ran water through the Wastewater Ditch without asking permission.  It also found that animosities existed between John Zimmerman and Ray during 1990 and 1991.  The Defendants' attorney, however, sent Ray a letter that expressly noted the permissive nature of Ray's predecessors' use.  While Ray may not have asked for permission to use the Wastewater Ditch, he cites no evidence that suggests that the Defendants withdrew permission to use the Wastewater Ditch before 1992.  For these reasons, the District Court did not err in concluding that Ray's use of the Wastewater Ditch was not adverse in 1990 and 1991.

¶36  The question thus becomes whether John Zimmerman interrupted Ray's use within five years of 1992.  Specifically, we must decide whether the court correctly held that John Zimmerman interrupted Ray's use in September 1996.  We conclude that it did.

¶37  In August 1996, John Zimmerman plugged the culvert leading onto his property, thus blocking the ditch.  Ray nevertheless attempted to use the Wastewater Ditch in September.  When Ray began

11

running water through the ditch, however, the blockage caused the Zimmerman Property to flood. Upon seeing the flooding, Paul Bromenshenk pulled a second wastewater ditch so that the water would not run onto their road. This evidence, the court concluded, indicated that the Wastewater Ditch no longer existed across the Zimmerman Property.

¶38 What establishes continuous use depends on the nature and character of the claimed right; such use does not necessarily entail constant use. *See Hays v. De Atley* (1923), 65 Mont. 558, 564, 212 P. 296, 298. All that the claimant must show regarding a ditch conveying water is that he used the ditch whenever he needed to do so. *See Te Selle v. Storey* (1957), 133 Mont. 1, 6, 319 P.2d 218, 220. Ray argues that any interruption in September occurred after the typical irrigation season and thus did not interrupt his normal use of the ditch. Ray nevertheless attempted to use the Wastewater Ditch in September 1996 to irrigate his crops for a third cutting of hay. John Zimmerman blocked this use.

¶39 The District Court concluded that this blockage of the ditch resulted in an interruption of Ray's adverse use. Ray argues that the court's result, taken to its logical extreme, would require a claimant to continuously run water through a ditch to prevail on a prescriptive easement claim. John Zimmerman, however, did not block the ditch at a time when Ray was not using it. Instead, John Zimmerman blocked the ditch while Ray was irrigating his crops. Therefore, we conclude that the District Court did not err in

12

concluding that Ray's use was not continuous and uninterrupted for the five-year period.

## ISSUE THREE

¶40 Did the District Court abuse its discretion by awarding one-half of the attorney's fees claimed by the Defendants?

¶41 A district court has discretion in determining the reasonableness of attorney's fees. *See Carkeek v. Ayer* (1980), 188 Mont. 345, 347, 613 P.2d 1013, 1015. Absent an abuse of that discretion, we will not overturn such determinations. *See Carkeek*, 188 Mont. at 347-48, 613 P.2d at 1015. We have explained a court's determination of the reasonableness of attorney's fees as follows:

> The determination of reasonable attorney's fees is not subject to precise calculation or a formulaic approach. We previously have stated that the following factors should be considered as guidelines in making such a determination: (1) the amount and character of services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience required; (6) the attorneys' character and standing in their profession; and (7) the result secured by the services of the attorneys. These factors are not exclusive, however, and district courts may consider other factors as well. Thus, the reasonableness of attorney's fees must be ascertained under the unique facts of each case.

*Pankratz v. Teske*, 2002 MT 112, ¶ 22, 309 Mont. 499, ¶ 22, 48 P.3d 30, ¶ 22 (citing *Chamberlin v. Puckett Constr.* (1996), 277 Mont. 198, 205, 921 P.2d 1237, 1241-42 (citations omitted)).

¶42 The District Court concluded that § 70-17-112(5), MCA, entitled the Defendants to reasonable attorney's fees. The Defendants submitted a claim of $1,133 for the Bromenshenk Defendants and $36,069.50 for the Zimmerman Defendants. After

13

reviewing the case and the attorneys' role in it, the court decided to reduce the Defendants' attorney's fees by half.

¶43 In reaching this conclusion, the court listed several factors on which it relied. The court first noted that lead counsel were relatively equal as to experience and standing within the legal community. Also, the Defendants' counsel rendered more than twice the time and services that Ray's counsel rendered, even though Ray had the "laboring oar to carry the burden of proof." The court next explained that neither party claimed money damages and that the matter required no greater professional skill or experience than a variety of other types of cases. It also observed that Ray was successful in proving many of the elements for a prescriptive easement. Furthermore, the court noted that the Defendants' witnesses at trial were somewhat repetitive and that the Defendants' attorneys duplicated some of their work. The court explained that, despite these findings, the Defendants' attorneys spent substantially more time on the matter than did Ray's attorney. Based on these reasons, the court decided to reduce the award of attorney's fees by half.

¶44 The Defendants counter that the District Court mischaracterized the relevant evidence and factors when it reduced their attorney's fees. They contend that their attorney had to represent a multiple-party client regarding two pieces of property; they had a more difficult burden to carry; their case required calling multiple witnesses; they had a stronger motivation to

14

vigorously defend their case than Ray had; and they ultimately prevailed in this matter.

¶45 Balancing these various factors is the job of the District Court. *See Carkeek*, 188 Mont. at 347-48, 613 P.2d at 1015. The Defendants undoubtedly feel that all these factors taken together deserve a higher award of attorney's fees. Weighing this various evidence, however, we do not conclude that the court exceeded its discretion by reducing the Defendants' requested fees by half.

¶46 The Defendants also argue that a fifty percent reduction in attorney's fees was arbitrary. We disagree. We have held that a court must base an award of attorney's fees on some competent evidence. *See Krone v. McCann* (1983), 205 Mont. 190, 192, 666 P.2d 766, 767; *Petritz v. Albertsons, Inc.* (1980), 187 Mont. 102, 110, 608 P.2d 1089, 1094. The district courts in both *Krone* and *Petriz* provided no rationale or evidentiary foundation for reaching their conclusions. The District Court in this case, however, did provide comparisons between counsel for Ray and the Defendants. Based on this comparison, the court decided to reduce the award of attorney's fees by half. While the Defendants may not like the result, the court had a basis for it.

¶47 The District Court, therefore, did not abuse its discretion when it awarded the Defendants one-half of their requested attorney's fees.

ISSUE FOUR

¶48 Did the District Court err in disallowing costs claimed by the Defendants?

15

¶49 Section 25-10-201(9), MCA, provides that a party may claim costs for "other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law." The Defendants argue that the District Court erred in disallowing costs for court reporter services, subpoena services and Westlaw computer research. They claim that these costs were necessary and that the court thus erred in not awarding them.

¶50 We agree with the Defendants that the transcripts were necessary to prepare post-trial findings and conclusions as required by the District Court. Likewise, we conclude that the subpoena services were necessary to compel witnesses to attend trial. We disagree, however, that costs associated with Westlaw research were necessary. These costs may be common costs in modern law practice, but they primarily involve improving a law practice's efficiency. Therefore, the District Court could reasonably conclude that they were not necessary costs.

¶51 For these reasons, we conclude that the District Court was correct in denying costs for Westlaw research, but erred in denying costs for transcript expenses and subpoena service fees.

¶52 Affirmed in part and reversed in part.

/S/ JIM REGNIER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE