No. 01-044

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 295N

SITZ ANGUS FARMS LIMITED PARTNERSHIP,
a Montana Limited Partnership,

        Plaintiff, Respondent and Cross-Appellant,

    v.

EDWARD J. DALLASERRA, JR., and
DONALD A. DALLASERRA,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Fifth Judicial District,
                    In and for the County of Beaverhead,
                    Honorable Frank M. Davis, Judge Presiding

COUNSEL OF RECORD:

        For Appellants:

        Holly Jo Franz, Gough, Shanahan and Johnson, Helena, Montana

        For Respondent:

        John E. Bloomquist & Patti L. Rowland, Doney, Crowley, Bloomquist
        and Uda, Helena, Montana

Submitted on Briefs:  November 8, 2001

Decided:  December 12, 2002

Filed:

_____
                      Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Appellants, Edward J. Dallaserra, Jr., and Donald A. Dallaserra (Dallaserras), appeal from the findings of fact and conclusions of law entered by the Montana Fifth Judicial District Court, Beaverhead County, declaring ownership and interests in Blomquist Spring and Blomquist Reservoir.  Sitz Angus Farms (Sitz) cross-appeals the District Court's decision denying attorney fees to Sitz as the prevailing party.

¶3    We affirm in part, reverse in part, and remand.

¶4    We rephrase the issues on appeal as follows:

¶5    **1.   Did the District Court exceed its jurisdiction when granting declaratory relief regarding water rights to Blomquist Spring and water storage rights in Blomquist Reservoir?**

¶6    **2.   Did the District Court err by denying Appellants' post-judgment motion to certify the parties' underlying water rights claims to the Montana Water Court?**

¶7    **3.  Did the District Court err in denying Appellants' motion to amend the judgment to conform to the findings of fact and conclusions of law entered by the District Court?**

¶8    **4.  Did the District Court err in denying Appellants' motion for a new trial?**

¶9    **5.    Did the District Court err in denying the Respondent/Cross-Appellant an award of costs and attorney fees pursuant to § 70-17-112, MCA?**

*BACKGROUND*

¶10 Dallaserras and Sitz own adjacent pieces of property. Both pieces of property were previously owned by John E. Blomquist (Mr. Blomquist), now deceased. In 1944, Mr. Blomquist filed a Notice of Appropriation of Water Right in Beaverhead County, claiming the water of certain springs. In the same year, Mr. Blomquist and his son Emmett E. Blomquist (Emmett) developed what is known as the Blomquist Spring and developed and constructed a reservoir known as the Blomquist Reservoir. Water from Blomquist Spring flows in a southeasterly direction and is conveyed to the reservoir by means of a channel or ditch constructed by Mr. Blomquist.

¶11 The ditch, or channel, conveying water from Blomquist Spring currently flows through Blomquist Reservoir to a headgate control device located at the reservoir dam impoundment. Water from Blomquist Spring is stored in Blomquist Reservoir when the water level in the reservoir is sufficient to inundate the channel or ditch, or when the headgate is closed and the reservoir fills.

¶12 The reservoir has two headgate outlets situated at the dam. The north headgate is situated at the terminus of the ditch from Blomquist Spring and controls the release of water to a ditch which courses across Dallaserras' property to supply water to both Dallaserras and Sitz. The south headgate is situated at the southern edge of the dam and controls the release of water to a ditch system which transports water to Dallaserras' pump site. Water released from the south headgate is not available to Sitz at Sitz's pump site during the irrigation season but has historically

supplied stockwater to Sitz's property in the fall and winter. Water released from the south headgate bypasses the water distribution and measuring device, known as a "Splitter Box," which is situated in the ditch conveying irrigation water from the north headgate.

¶13 The Blomquist Reservoir is situated on the property currently owned by Dallaserras. The Blomquist Spring and Blomquist Reservoir were part of a large system used to benefit the property originally owned by Mr. Blomquist, and the reservoir was required in order to control and convey the water derived from Blomquist Spring.

¶14 Mr. Blomquist first conveyed a portion of his property by a deed dated April 15, 1955, conveying to his son and daughter-in-law, Emmett and Voris C. Blomquist (Voris), an undivided one-quarter interest in the spring and reservoir along with an unqualified easement across his land for the purpose of conveying water to the land of Emmett and Voris.

¶15 In May 1955, Emmett purchased from his brother 80 additional acres of property that was also previously owned by his father. According to Emmett, the property purchased from his brother contained the water rights from Willow Creek, which Emmett then traded to his father in exchange for a greater share of the right to the water from Blomquist Spring. Water from Willow Creek also feeds into the Blomquist Reservoir. A deed transferring the Willow Creek water rights from Emmett to his father was executed in 1958. No similar deed, however, was executed to transfer additional

4

spring rights from Mr. Blomquist to Emmett.  It is this property, formerly owned by Emmett and Voris, that is now owned by Sitz.

¶16  In 1961, Mr. Blomquist transferred his remaining property to Don T. McCandless  and T.M. McCandless (McCandlesses), along with "[a]ll water and water rights, ditches and ditch rights thereunto belonging or in any ways appertaining, including but not limited to the right to use 500 inches of water of that certain unnamed spring the notice of appropriation of which is recorded in Book 73 of Water Rights, at page 351, official records of Beaverhead County, Montana . . . ."

¶17  In 1974, Emmett, Voris, and the McCandlesses executed and recorded an instrument entitled "Correction Conveyance of Water Right."   Sitz and Dallaserras agree that this instrument was completed by their predecessors, but disagree on the effect the instrument had on the legal interests of each party to the Blomquist Reservoir.   The Correction Conveyance described the Blomquist and McCandless interest as follows:

> That T.M. McCandless and Verla McCandless are the owners of a two-thirds (2/3) interest, and that Emmett E. Blomquist and Voris C. Blomquist are the owners of a one-third (1/3) interest in and to that certain unnamed spring and the waters derived therefrom, together with all rights applicable thereto . . . .

At trial, Emmett, a party to the correction instrument, testified that the intention of the parties was to split the waters derived from Blomquist Spring on a one-third/two-third basis.

5

¶18   In 1983, Emmett and Voris sold their property to Mallon Ranch Company under a contract for deed.   This transfer included all water and water rights, ditches and ditch rights appurtenant to the real property including, but not limited to, one-third of the flow of the "Big Spring" and "all tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining."

¶19   In June 1997, Sitz purchased the property from the Mallon Ranch Company.   The "Assumption Agreement" by Sitz and Mallon contained identical language regarding water rights and appurtenances.   Based on previous claims and conveyances, Dallaserras agree that Sitz is entitled to one-third of the *flow* of Blomquist Spring for Sitz's property and that Dallaserras are entitled to the remaining two-thirds flow of Blomquist Spring for use on their own property.   Sitz and Dallaserras are also in agreement that Dallaserras are entitled to all of the "Willow Creek" water for use on Dallaserras' land.   They disagree, however, on whether Sitz is entitled to use Blomquist Reservoir to store Sitz's share of water generated from Blomquist Spring.   As a result of the dispute over ownership of storage water in Blomquist Reservoir and a dispute over Sitz accessing the north headgate over Dallaserras' land for the purpose of adjusting the amount of water released by the north headgate into the north ditch, Dallaserras placed a lock on the north headgate and blocked access across their land from the highway.   Dallaserras' actions led to Sitz filing its complaint in June 1999.

6

¶20 Sitz sought from the District Court a declaratory judgment determining that it owns a one-third interest in the direct flow from Blomquist Spring and that it additionally has a right to any of its one-third interest that may be stored in Blomquist Reservoir. Sitz also sought damages and injunctive relief against Dallaserras for alleged interference with Sitz's primary and secondary ditch easements and for Dallaserras' alleged interference with Sitz's use of the water by locking the north headgate and blocking access across their land. Finally, Sitz requested that the District Court order Dallaserras to install measuring devices and to remedy a defective condition of the Splitter Box.

¶21 After a bench trial, the District Court entered findings of fact and conclusions of law and concluded that Sitz was entitled to a one-third interest in the water derived or generated from Blomquist Spring. The District Court concluded that Sitz was entitled to a one-third interest in and to Blomquist Reservoir to store and convey its interest in water derived or generated from Blomquist Spring. The District Court further concluded that Sitz's interest included primary and secondary easements for the conveyance of the water and for access to all conveyance works across Dallaserras' property consistent with previous owners' historic access.

¶22 In its judgment the District Court permanently enjoined Dallaserras from locking headgates, access gates, and from moving or interfering with the distribution works and enjoined Dallaserras

from any further activities interfering with Sitz's rights to peaceably enjoy its interest.

¶23 In its findings and conclusions, the District Court also ordered Dallaserras to repair and replace the Splitter Box and ordered the parties to develop an equitable and workable plan to distribute to each party their respective one-third two-third interest, splitting costs between Sitz and Dallaserras according to ownership interest. Finally, the District Court ordered that each party bear their own respective costs and attorney fees.

¶24 Dallaserras now appeal. Sitz cross-appeals the District Court's denial of its request for costs and reasonable attorney fees as the prevailing party.

*DISCUSSION*

¶25 **1. Did the District Court exceed its jurisdiction when granting declaratory relief pertaining to water rights in Blomquist Spring and water storage rights in Blomquist Reservoir?**

¶26 Dallaserras contend that the District Court's declaratory ruling that Sitz owned a one-third interest in the water from Blomquist Spring and a one-third interest to store the water in Blomquist Reservoir is a de facto adjudication of water rights which lies exclusively within the jurisdiction of the Montana Water Court. Dallaserras argue that, because the water court had issued no previous decrees regarding water rights to Blomquist Spring or Blomquist Reservoir, the District Court did not have jurisdiction to issue an injunction or clarify entitlements based upon any former decree of water rights.

8

¶27 Sitz first responds that its one-third ownership interest in the water from Blomquist Spring was admitted by Dallaserras in their Answer, stipulated to as a judicial admission in the pretrial order, and recognized at trial. Sitz contends that the inclusion of this fact in the District Court's findings of fact is nothing more than a recognition, rather than an adjudication, by the District Court of agreed upon water rights in Blomquist Spring.

¶28 Second, Sitz responds that the District Court's declaration of interests in Blomquist Reservoir was a declaration of property rights, wholly apart and separate from a declaration or adjudication of water rights. Sitz argues that such a declaration of property rights in Blomquist Reservoir consisted of an adjudication of easement and ownership interests in the *conveyance system* developed by Sitz's and Dallaserras' predecessors, and consisted of and required no adjudication of priority dates, established flow rates, points of diversion, places of use, acres irrigated, nor any other elements or parameters of the rights as would be adjudicated by the Water Court.

¶29 Dallaserras rely on this Court's decision in *State ex rel. Jones v. District Court* (1997), 283 Mont. 1, 938 P.2d 1312. In *Jones*, the four district court judges of the Fourth Judicial District ordered that a 1902 decree, that decreed 27 water rights on Carlton Creek, be updated. The judges were concerned about the deteriorating physical state of the 1902 decree in conjunction with the fact that it would be necessary for the water commissioners, as

9

well as the public, to handle the decree. *Jones*, 283 Mont. at 3-4, 938 P.2d at 1314-15.

¶30 The Montana Water Court, however, was also in the process of adjudicating the rights to Carlton Creek, which included 92 claims for Carlton Creek waters. Had the Updated Decree been allowed to stand, it would have controlled the determination and administration of water rights on Carlton Creek.

¶31 The order authorizing the updated decree provided in part:

Finding of Fact 3 – To remedy this situation the 1902 decree should be reworked and expanded to include additional information such as the land description of the place of use, any subsequent court order defining a decreed right, the judicial knowledge of the court relating to present use of water, and information regarding ditches, lake storage water or any other information that is necessary for a water commissioner to have to properly perform his duty.

Order number 4 – That the updated decree shall supercede [sic] all prior pleadings in this action relating to the matters contained in the updated Decree.

*Jones*, 283 Mont. at 6, 938 P.2d at 1315-16.

¶32 The resulting Updated Decree decreed "the ownership, priority date, flow rate, place of use and means of diversion of the various rights." *Jones*, 283 Mont. at 6, 938 P.2d at 1316. It thus constituted a de facto adjudication of water rights, as an adjudication of said elements are within the exclusive jurisdiction of the Water Court. *Jones*, 283 Mont. at 6, 938 P.2d at 1316. We thus held that, pursuant to § 85-2-234(6), MCA, the district court exceeded its jurisdiction. "[W]hile a district court may grant injunctive or other relief which is necessary and appropriate to preserve property rights or the status quo pending issuance of a

10

final decree, the district court lacks jurisdiction to issue a final decree with regard to the water right." *Jones*, 283 Mont. at 7, 938 P.2d at 1316.

¶33 We agree with Sitz that *Jones* is not applicable to the present situation. As noted by Sitz, the pretrial order reflects an agreement between Sitz and Dallaserras that Sitz was entitled to one-third of the flow of Blomquist Spring. Likewise, in opening statement at trial, counsel for Dallaserras stated:

> One, Sitzes have asked this Court to declare that they're entitled to one-third of the flow from the spring. We have no objection to that. We agree with that. Secondly, Sitz is asking this Court to declare that they're entitled to store in the reservoir one-third of their water if they wish. And we do object to that . . . .

¶34 The District Court's declaration that Sitz owns one-third and Dallaserras own two-thirds interest in Blomquist Spring was not an adjudication of water rights, but merely a recognition that the parties presented no question of fact regarding ownership of such water rights based upon previous use and conveyances.

¶35 Further, this Court has previously held that water rights and property rights, such as ditch rights, are entirely bifurcated and thus separate from one another. *See Mildenberger v. Galbraith* (1991), 249 Mont. 161, 166, 815 P.2d 130, 134 (citation omitted); *also see Smith v. Krutar* (1969), 153 Mont. 325, 331, 457 P.2d 459, 462 (concluding that a water right and a ditch right may exist as separate and independent species of property).

¶36 The determination that Sitz owned a one-third interest in Blomquist Reservoir in no way adjudicated existing water rights.

11

As the District Court ably noted, this was not a water rights case, but a secondary easement case dealing with, among other issues, Sitz's interest to store and convey water through and across Dallaserras' property via Blomquist Reservoir, which, it determined, was an appurtenance to the Sitz property. Notably, the District Court did not adjudicate priority dates, establish flow rates, points of diversion, places of use, acres irrigated, nor any other elements or parameters of each parties' water rights. Rather, its determination that Sitz owned a one-third interest in Blomquist Reservoir was an adjudication of easement and ownership interests in the conveyance system. Such adjudication of property rights is properly within the jurisdiction of the District Court.

¶37  We hold, therefore, that the District Court did not exceed its jurisdiction. Its decision is affirmed accordingly.

¶38  **2.  Did the District Court err by denying Appellants' post-judgment motion to certify the parties' underlying water rights claims to the Montana Water Court?**

¶39 Dallaserras contend that, as the District Court has no jurisdiction over water rights, it erred in denying Dallaserras' post-judgment motion for certification of the parties' claims to the Montana Water Court. However, as we have already concluded that the District Court did not exercise authority outside its jurisdiction, as it did not adjudicate elements of either parties' water rights claims, we likewise conclude that the District Court did not err in denying Dallaserras' post-judgment motion for certification to the Water Court.

¶40  The denial of Dallaserras' post-judgment motion is affirmed.

12

¶41 **3.   Did the District Court err in denying Appellants' motion to amend the judgment to conform to the findings of fact and conclusions of law entered by the District Court?**

¶42   The standard of review of discretionary trial court rulings is abuse of discretion.   *Harwood v. Glacier Electric Co-op, Inc.* (1997), 285 Mont. 481, 492, 949 P.2d 651, 658 (citation omitted). Discretionary trial court rulings include trial administration issues and post-trial motions.   *Harwood*, 285 Mont. at 492, 949 P.2d at 658.

¶43   Dallaserras contend that the judgment entered by the District Court addressed a number of issues which were not addressed in the court's findings of fact and conclusions of law, including the granting of injunctive relief, the requirement for Dallaserras to move the Splitter Box at their sole cost, the specific definition of Sitz's secondary ditch easement, and the finding that Dallaserras interfered with Sitz's easement.   Dallaserras thus argue that the judgment is not supported by the findings of fact and requests that this Court remand to the District Court for entry of judgment consistent with its findings.

¶44   Sitz responds that the District Court's relief was within its equitable authority, that the judgment was grounded upon the evidence presented at trial and properly based on the court's findings, conclusions, and memorandum.   Sitz prepared the judgment at the direction of the District Court and submitted a copy to Dallaserras for comment.   After nearly two weeks, Sitz received no comment from Dallaserras and submitted the judgment to the District Court for consideration.

¶45  This Court has previously stated that:

> [F]indings of fact and conclusions of law are not the judgment, but merely the foundation for the judgment. This foundation need not consist of a multitude of evidentiary facts, but must be comprised of ultimate facts.  In other words, the findings of fact required by Rule 52(a) is nothing more than a recordation of the essential and determining facts upon which the District Court rested its conclusions of law and without which the District Court's judgment would lack support.

*Wareing v. Schreckendgust* (1996), 280 Mont. 196, 207, 930 P.2d 37, 44 (citation omitted).

¶46  While the findings of fact, conclusions of law and memorandum of the District Court do not directly address the granting of injunctive relief to Sitz, the District Court included in the findings the ultimate fact that Dallaserras' control of the distribution system of Blomquist Reservoir "has deprived and is depriving Sitz" the full use of its one-third interest in the water from Blomquist Spring.  This finding is sufficient to support the injunctive relief in the judgment, and additionally supports inclusion in the judgment that the actions of Dallaserras interfered with Sitz's peaceful enjoyment associated with its one-third interest.

¶47  Likewise, the above findings, in addition to the District Court's finding that Blomquist Reservoir is an appurtenance to the respective properties, supports the inclusion of the specific definition of Sitz's secondary ditch easement in the court's judgment.

¶48  We do agree with Dallaserras that the judgment is inconsistent with the District Court's findings of fact and conclusions of law wherein the judgment orders that Dallaserras

14

shall bear all costs associated with repairing and replacing the Splitter Box in a manner which results in an accurate and reliable distribution of water according to each parties' interest. The District Court specifically states in finding # 11:

> The Court finds that any cost necessary to implement a practical distribution plan should be borne by the parties, 2/3-1/3. If a water master or commissioner is necessary, they should likewise share that cost.

¶49 The judgment, in paragraph 6, thus erroneously requires Dallaserras to bear all costs associated with repairing and replacing the Splitter Box. We hold, therefore, that the District Court erred in ordering that Dallaserras bear all costs associated with repairing and replacing the Splitter Box. This portion of the judgment is reversed and remanded accordingly. Upon remand, the District Court shall amend the judgment to reflect that the parties shall share costs according to their respective interests.

¶50 The decision of the District Court in denying Dallaserras' motion is otherwise affirmed.

¶51 **4. Did the District Court err in denying Appellants' motion for a new trial?**

¶52 Dallaserras contend that a prejudicial irregularity occurred during trial that prevented them from receiving a fair trial. According to an affidavit submitted by Dallaserras, the judge fell asleep during trial, missing all or portions of the testimony of Larry Lee Mallon (Mallon). Dallaserras argue that, as the judge did not avail himself of the opportunity to listen to Mallon's testimony or observe his demeanor, the court was in no position to issue findings in this matter.

15

¶53 Dallaserras rely on this Court's holding in *Worden v. Alexander* (1939), 108 Mont. 208, 90 P.2d 160, 161-62, wherein we stated:

> It has been held by this court that where a motion for a new trial is heard by a judge who did not try the case, such judge, not having seen the witnesses or heard their testimony and observed their demeanor on the stand, was compelled to gain his knowledge of the case from the record alone, and was therefore in no better position to determine the motion than is this court, and hence his order does not carry with it the presumption usually indulged in favor of such order.

¶54 Sitz responds that Dallaserras did not suffer prejudice as Mallon's testimony did not support any of Dallaserras' assertions, but rather, buttressed Sitz's assertions in its complaint. Further, Sitz argues that even without Mallon's testimony, the District Court received numerous documentary exhibits and the testimony of other witnesses, particularly the testimony of the former owner of the Sitz property, Emmett Blomquist.

¶55 We agree with Sitz and find Dallaserras' reliance on *Worden* unpersuasive. This Court's holding in *Worden* broadly refers to a situation in which a trial judge has not had the benefit of listening to or observing any trial witnesses, and was thus in no better position than this Court to review a transcript and grant or deny a motion for a new trial. That is not the case presently before this Court.

¶56 In the present situation, it is not alleged that the trial judge did not listen to or observe the other seven witnesses who testified at trial. Prejudice thus cannot be presumed. Rather, a review of the transcript is necessary and helpful. The transcript

16

reveals that Larry Mallon testified that he was familiar with the irrigation practices on both the Dallaserras and the Sitz properties. Mallon testified that some of his irrigation water probably flowed from water stored in the Blomquist Reservoir, that he participated in maintenance of the channels, spring and the reservoir and paid for any maintenance according to his one-third interest. He further testified that he commonly accessed the Splitter Box and pump site location by crossing over the Dallaserras property from the Highway 91 North access point. Mallon also testified, based on what he had been told by Emmett, that he believed his one-third interest included the right to store water in the reservoir and that he would access the reservoir if he knew there was some water in it that he could use.

¶57 We note that the substance of Larry Mallon's testimony lends support to Sitz's allegations and offers nothing to substantiate Dallaserras' assertions. As a result of our review of the entire transcript, we conclude that, even without Mallon's testimony, the District Court's findings of fact are supported by substantial evidence, particularly the testimony of the former owner of the Sitz property, Emmett.

¶58 This Court reviews the findings of a district court sitting without a jury to determine if the court's findings are clearly erroneous. *See* Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence or if a review of the record leaves this Court with

17

the definite and firm conviction that a mistake has been committed. *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, ¶ 19, 53 P.3d 870, ¶ 19 (citation omitted).

¶59 As the District Court's findings are supported by substantial evidence, apart from Mallon's testimony, we conclude that its findings are not clearly erroneous and that Dallaserras did not suffer prejudice even in the event that the trial judge may have missed all or part of Mallon's testimony.

¶60 **5. Did the District Court err in denying the Respondent/Cross-Appellant an award of costs and attorney fees pursuant to § 70-17-112, MCA?**

¶61 In its July 2000, order, the District Court found that "Dallaserras' control of the distribution system of the reservoir water both from the spring and Willow Creek, has deprived and is depriving Sitz" of the full use of what Dallaserras admit is a one-third right to the water originating from Blomquist Spring.

¶62 In its attached Memorandum, the District Court stated: "Although downright arrogant and unneighborly, the Court gives them the benefit of the doubt as to what they perceived to be a good faith position. Thus in the Court's discretion, no costs or attorney fees are imposed. Further interference to a secondary easement right would surely justify such sanctions."

¶63 Sitz contends that it is the prevailing party in this action and, as the prevailing party, is entitled to costs and attorney fees pursuant to § 70-17-112(5), MCA. Said section provides:

> If a legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney's fees.

18

Sitz brought this action, in part, pursuant to § 70-17-112(1), MCA, which provides:

> A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.

In this action, Sitz pled interference with its easement interests in Blomquist Reservoir, the attendant ditch, distribution system, and interference by Dallaserras of Sitz's secondary easements to access said interests.

¶64    Sitz obtained a ruling enforcing subsection (1), guaranteeing a secondary easement and preventing Dallaserras from encroaching or impairing said easement.  As Sitz is the prevailing party in this action, pursuant to subsection (5), Sitz is also entitled to receive costs and reasonable attorney fees.  Accordingly, as Sitz successfully enforced subsection (1), the District Court, pursuant to subsection (5), retained no discretion to deny costs and reasonable attorney fees.  Said costs and attorney fees include those incurred by Sitz herein on appeal.  *See Kephart v. Portmann* (1993), 259 Mont. 232, 239, 855 P.2d 120, 124 (citing *Sharon v. Hayden* (1990), 246 Mont. 186, 189, 803 P.2d 1083, 1085).

¶65  We hold that Sitz, as the prevailing party, is entitled to costs and reasonable attorney fees pursuant to § 70-17-112(5), MCA.  We reverse and remand accordingly.

¶66  Affirmed in part, reversed in part, and remanded.

/S/ JIM RICE

We concur:

19

/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER