No. 01-086

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 176N

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

        Petitioner and Respondent,

v.

AMERICAN MEDICAL OXYGEN,

        Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                     In and for the County of Lewis and Clark, Cause No. BDV-99-404
                     The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Vernon E. Woodward, Hendrickson, Everson, Noennig & Woodward,
                Billings, Montana

        For Respondent:

                Barbara Hoffmann, Department of Public Health & Human Services,
                Helena, Montana

                           Submitted on Briefs:  March 14, 2002

                                 Decided:  July 1, 2003

Filed:

_____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 American Medical Oxygen (AMO), a Medicaid provider and supplier of medical equipment, appeals a decision by the First Judicial District Court, Lewis and Clark County, ordering it to repay the Department of Public Health and Human Services (DPHHS or "the Department") several hundred thousand dollars based on improper billing. We affirm.

¶3 The Montana Medicaid Program is a joint federal-state program that provides medical assistance to low-income individuals. DPHHS administers the program in accordance with federal and state law. AMO is an enrolled provider with the Montana Medicaid Program. It supplies oxygen and related durable medical equipment (DME) to Montana Medicaid recipients.

¶4 In 1997, DPHHS conducted a post-payment review of claims submitted by AMO from January 1993 through January 1997, and concluded that AMO had been significantly overpaid due to AMO's billing errors. DPHHS notified AMO of the results of its review and in January 1998, the Department demanded repayment of over $430,000 in erroneously

billed charges. DPHHS subsequently acknowledged some calculation errors and reduced its overpayment claim against AMO to approximately $336,000.

¶5 DPHHS sought to recover Medicaid overpayment that resulted from a number of billing errors by AMO. DPHHS makes the following claims about improper billing:

1. AMO should have stopped billing for rental equipment once the rental payments exceeded the purchase price for the items;

2. AMO improperly billed for DME provided to nursing home residents despite the fact that the Medicaid payments had already been issued directly to the nursing homes, from which AMO should have sought payment; and

3. AMO billed excessive charges and units of service for hand held nebulizers.

¶6 Effective October 1, 1995, Rule 46.12.805, ARM, was amended to establish a capped rental program that limited rental fees to 120% of the purchase price of the rental item. AMO admits that it billed rental fees in excess of the purchase price both before and after October 1995. However, AMO contends it was entitled to do so prior to that date because there was no specific administrative rule tying fees to the purchase price at that time.

¶7 The Department asserts that its Medicaid Provider Manual (provider manual) notified DME providers that rentals could not be billed in excess of the purchase price during the entire time for which the overpayment was assessed. Upon enrolling as a Medicaid provider in 1985, AMO signed a Medicaid Provider Enrollment Form agreeing to abide by the policies set forth in the provider manual. Thus, DPHHS argues, AMO was contractually

3

bound to comply with policies outlined in the manual--including the purchase price limit on rentals-- prior to the 1995 establishment of the capped rental program.

¶8 AMO admitted some overpayment, but requested an administrative hearing to dispute the amount of the overpayment. Hearings Officer Joseph P. Sternhagen conducted two days of hearings. On February 4, 1999, Mr. Sternhagen issued his Findings of Fact, Conclusions of Law and Order. He concluded that overpayments to AMO were made and that DPHHS was legally authorized to collect those overpayments. Further, he found that the Department's policy not to pay for rental items beyond the purchase price was clearly stated in the provider manual and that AMO's contractual obligation to adhere to the policies in the manual rendered improper its consistent billing of DME in excess of the purchase price.

¶9 Both parties appealed to the Board of Public Assistance (Board). The Board conducted a hearing and issued its order on May 21, 1999, adopting the decision of the Hearings Officer with a few minor exceptions.

¶10 AMO and DPHHS cross-petitioned for judicial review to the District Court. The District Court, Judge Jeffrey M. Sherlock presiding, issued its decision on November 28, 2000. It essentially agreed with the decision of the Hearings Officer, holding that "the Department is entitled to recover any Medicaid overpayments made during the [entire] review period . . . regardless of whether the overpayment was made due to Department or AMO error and without having to prove any intentionally wrongful act on the part of AMO." AMO sought reconsideration and the court issued a second opinion on February 5, 2001, making no significant changes to its earlier decision. AMO appeals.

4

¶11     In November 2001, while this case was under review, we issued our decision in *State v. Vainio*, 2001 MT 220, ¶ 33, 306 Mont. 439, ¶ 33, 35 P.3d 948, ¶ 33, holding that David Vainio could not be convicted of the criminal offense of Medicaid fraud based on violations of policies stated in the Medicaid Provider Manual which had not been adopted in accordance with the Montana Administrative Procedure Act (MAPA). *Vainio* bears factual similarities to this case, as DPHHS seeks to recover payments billed by AMO in violation of policies contained in the Medicaid Provider Manual, which were not themselves adopted in a rule pursuant to MAPA.

¶12     Given the factual similarities between the cases, we asked the parties to submit supplemental briefs addressing what impact, if any, *Vainio* should have on the case at bar. As DPHHS presents it, the question is whether AMO can be required to repay Medicaid claims which were billed in violation of policies contained in the Medicaid Provider Manual, but not adopted in accordance with MAPA.

¶13     Upon thorough review, we conclude that our decision in *Vainio* is not germane here. AMO inappropriately equates our conclusion in *Vainio* that "a charge of Medicaid fraud cannot be based on the violation of a policy which has not been adopted in compliance with MAPA" (*Vainio*, ¶ 33) with a rule that would prohibit DPHHS from relying on policies articulated in its provider manual to collect overpayments made to suppliers. *Vainio* is a criminal case about Medicaid fraud. Here, we have a purely civil dispute at the center of which is a voluntary contract between DPHHS and AMO, which incorporates and requires adherence to the policies set forth in the Medicaid Provider Manual. There are no allegations

5

of intentional wrongdoing or threat of criminal sanctions here. DPHHS is merely seeking to recover funds paid to AMO based on erroneous billing; it is not attempting to criminalize AMO's conduct, as the State was doing in *Vainio*. Thus, MAPA has no application in this context.

¶14 A central tenet of contract law is that parties should be free to contract as they wish. *Duffy v. Butte Teachers' Union* (1975), 168 Mont. 246, 252, 541 P.2d 1199, 1202. AMO *chose* to become a Medicaid supplier in Montana. A representative of the company signed a contractual agreement with DPHHS that required AMO to comply with the policies set forth in the provider manual. The policies in question here require suppliers to provide services in a cost effective manner and allow the Department to recover overpayments if suppliers fail to meet that obligation. There is no legal or public policy justification for this Court to interfere with the rights of these parties as set forth in their contract. Thus, we decline to apply our decision in *Vainio* to this civil contract dispute.

¶15 We now turn to the merits of this appeal. AMO presents multiple fact-intensive issues for review on appeal. However, the dispositive issue is whether the court's findings of fact are supported by substantial evidence and are, therefore, not clearly erroneous and whether the court's conclusions of law are correct. *Ray v. Nansel*, 2002 MT 191, ¶¶ 19-20, 311 Mont. 135, ¶¶ 19-20, 53 P.3d 870, ¶¶ 19-20.

¶16 Here, the District Court's findings of fact and conclusions of law include comprehensive and well reasoned analysis. The dispositive factual findings and legal conclusions echo those of the Hearings Officer and the Montana Board of Public Assistance,

6

both having heard the dispute before it reached the District Court. On the face of the briefs and the record on appeal, and without rehashing the fact-driven components of the District Court order, there is clearly sufficient evidence to support the court's findings of fact. The conclusions of law are likewise well-reasoned and supported by precedent. Therefore, we affirm the judgment of the District Court.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ JIM RICE